Appeal No. 24-465

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

### JASON FYK
*Plaintiff-Appellant,*

v.

### FACEBOOK, INC.
*Defendant-Appellee.*

---

Appeal of January 12, 2024, Order Denying Motion for Relief Pursuant to Fed. R. Civ. P 60(B) and Terminating Motion Re: Constitutionality of 47 U.S.C. Sec. 230(C)(1) [D.E. 74] by Hon. Haywood S. Gilliam, Jr. of the U.S. District Court for the Northern District of California, 4:18-cv-05159-HSG

---

### APPELLANT'S OPENING BRIEF

---

**GREYBER LAW, PLLC**
Jeffrey L. Greyber, Esq. (*pro hac vice*)
jgreyber@greyberlaw.com
9170 Glades Rd., #161
Boca Raton, FL 33434
(561) 702-7673 (o)
(833) 809-0137 (f)

**PUTTERMAN | YU | WANG, LLP**
Constance J. Yu, Esq. (SBN 182704)
cyu@plylaw.com
345 California St., Suite 1160
San Francisco, CA 94104-2626
(415) 839-8779 (o)
(415) 737-1363 (f)

*Attorneys for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

**PAGE**

I.  Jurisdictional Statement ………………………………… 1-6

II.  Issues Presented …………………………………………… 6-10

III.  Statement of the Case / Relevant Facts …………………… 10-17

IV.  Summary of the Argument ………………………………… 18-19

V.  Argument …………………………………………………... 20-44

    A. The "Good Samaritan" General Provision of Section 230(c) Is, In Fact, Generally Applicable To Section 230(c)(1) AND Section 230(c)(2) – Facebook Should Have Never Been Afforded CDA Immunity Vis-à-Vis Its Backdoor Misclassification Of This Case As A 230(c)(1) Case, Warranting R. 60(b)(5) Relief ……………………………... 20-27

    B. The Rule 5.1 Constitutional Challenge Was Not Forfeitable And Could Not Have Been Advanced Sooner Than It Was, Warranting R. 60(b)(5) Relief ……………… 27-41

    C. Deprivation Of Constitutional Rights And Miscarriage Of Justice Are "Extraordinary Circumstances," Warranting R. 60(b)(6) Relief ……………………………... 41-44

VI.  Conclusion …………………………………………………... 44-45

Statement of Related Cases ……………………………………… 45

Certificate of Service …………………………………………….. 46

Certificate of Compliance ……………………………………….. 47

## **TABLE OF AUTHORITIES / CITATIONS**

**PAGE**

*Case Law*

*A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935) …………………………………………………………….. 30, 35

*Anderson v. Municipality of Anchorage*, No. 3:21-cv-00139-JMK, 2023 WL 2932962 (D. Alaska Apr. 13, 2023) ……………………… n.12

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) …………….. n.21

*Crowell v. Benson*, 285 U.S. 22 (1932) …………………………….. 39

*Dangaard, et al. v. Instagram, LLC, et al.*, No. C 22-01101 WHA, 2022 WL 17342198 (N.D. Cal. Nov. 30, 2022) …………………… 9, 17-18, 21-23, 25-27, 33-34, 40, n.16, n.21

*Doe v. Facebook, Inc.*, 142 S.Ct. 1087 (Mar. 7, 2022) ……………. 17

*DZ Reserve, et al. v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022) ……………………… 9, 17, 23

*Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019), cert. denied *via Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020) …………………… *passim*

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ………………………………... n.16, n.21

*Gonzalez v. Crosby*, 545 U.S. 524 (2005) …………………………. 42

*Gonzalez, et al. v. Google, LLC*, 598 U.S. 617 (2023) …………….. n.24

*Henderson, et al. v. Source for Public Data, L.P., et al.*, 53 F.4th 110 (4th Cir. 2022) …………………………………………….. 8, 17-18, 23, 26, 40, n.13

*Jarkesy, et al. v. SEC*, 34 F.4th 446 (5th Cir. 2022) ………………… 10, 18, 20, 23, 26, 28-29, 34, 44, n.14, n.22

*J.W. Hampton, Jr. & Co. v. U.S.,* 276 U.S. 394 (1928) ……………. 30, 34, 44, n.14

*Latshaw v. Trainer Wortham Comp. Inc.*, 452 F.3d 1097 (9th Cir. 2006) …………………………………………………………... 42

*Lemmon, et al. v. SNAP, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ……… 9, 17, 23, 25-27, 40, n.7

*Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847 (1988) …. 42

*National Federation of Independent Business, et al. v. Department of Labor, Occupational Safety and Health Administration, et al.,* No. 21A244, 595 U.S. __ (Jan. 13, 2022) ………………………….. 31, 44

*Ohio, et al. v. Department of Labor, Occupational Safety and Health Administration, et al.*, No. 21A247, 595 U.S. __ (Jan. 13, 2022) …... 31, 44

*Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009) ………………… 5, 19, 41-43, n.10

*Rumble, Inc. v. Google, LLC*, No. 21-cv-00229-HSG, 2022 WL 3018062 (N.D. Cal. Jul., 29, 2022) ………………………………… 9, 17, 23-24, 26, 40

*Starr v. City of Angels Camp*, 99 Fed.Appx. 792 (9th Cir. 2004) …... 5

*U.S. v. Alpine Land & Reservoir Co.*, 984 F.2d 1047 (9th Cir. 1993) .. 42

*U.S. v. Washington*, 394 F.3d 1152 (9th Cir. 2005), overruled on other grounds in *U.S. v. Washington*, 593 F.3d 790 (9th Cir. 2010) … 42

*Wayman v. Southard*, 10 Wheat. 1, 43 (1825) ……………………… 35

*Zeran v. AOL*, 129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) …………………………………………………… n.13

### Treatises / Legal Dictionaries / Articles

https://www.law.cornell.edu/wex/nondelegation_doctrine ............... 30

https://www.law.cornell.edu/constitution-conan/article-3/section-2/clause-1/the-constitutional-doubt-canon …………………………… 39

https://definitions.uslegal.com/i/intellligible-principle/ …………… 30

https://constitution.congress.gov/browse/essay/artI-S1-1%202/ALDE_00000010/%5b'declaration',%20'of',%20'independence'%5d …………………………………………… 30

### Codes

28 U.S.C. §1291…………………………………………….. 5

28 U.S.C. §1332 …………………………………………….. 2

28 U.S.C. §1391(b) …………………………………………… 2

47 U.S.C. §230 ……………………………………………... *passim*

Cal. Business & Professions Code §§17200-17210 ………………… 24-25, n.2

### Rules

Fed. R. Civ. P. 12(b)(6) …………………………………………… 14, n.6

v

Fed. R. Civ. P. 60(b)(3) ................................................... n.6

Fed. R. Civ. P. 60(b)(5) ................................................... *passim*

Fed. R. Civ. P. 60(b)(6) ................................................... *passim*

Fed. R. Civ. P. 5.1 ....................................................... *passim*

Fed. R. App. P. 32 ....................................................... 45

Ninth Cir. Rule 32-1 .................................................... 45

## I.  JURISDICTIONAL STATEMENT

This appeal relates to an order of dismissal pertaining to a Rule 5.1 constitutional challenge and a Rule 60 motion for reconsideration by Plaintiff / Appellant, Jason Fyk ("Fyk"), relating to his complaint against Defendant / Appellee, Facebook, Inc. ("Facebook").[1] This is Fyk's third appeal relating to Facebook's business strategy, resulting in interference with Fyk's livelihood which Fyk's Verified Complaint contends is unlawful because Facebook's actions were motivated by an anti-competitive animus.[2] In the first appeal, Fyk challenged the

---

[1] "__ER__" refers to Plaintiff's / Appellant's Excerpt of Record. 4-**ER**-595-623 is Fyk's August 22, 2018, Verified Complaint, 4:18-cv-05159-JSW, [D.E. 1]; 2-**ER**-57-240 and 3-**ER**-242-420 is Fyk's June 16, 2023, Second Motion for Relief Pursuant to Fed.R.Civ.P. 60(b) to Vacate and Set Aside Entry of Judgment, [D.E. 61]; 2-**ER**-48-56 is Facebook's June 30, 2023, Response, [D.E. 62]; 2-**ER**-40-47 is Fyk's July 7, 2023, Reply, [D.E. 63]; 2-**ER**-39 is Judge White's August 22, 2023, Order of Recusal, [D.E. 64]; 2-**ER**-38 is the District Court's August 22, 2023, Order Reassigning Case, [D.E. 65]; 2-**ER**-28-37 is Fyk's September 19, 2023, F.R.C.P. 5.1 Motion Re: the (Un)Constitutionality of 47 U.S.C. §230(c)(1), [D.E. 66]; 2-**ER**-25-27 is the United States of America's October 2, 2023, Acknowledgment of Notice of Constitutional Challenge, [D.E. 68]; 2-**ER**-21-24 is Facebook's October 3, 2023, Response to Plaintiff Jason Fyk's Motion Concerning the Constitutionality of 47 U.S.C. §230(c)(1), [D.E. 69]; 2-**ER**-17-20 is Fyk's October 3, 2023, Response to [D.E. 68], [D.E. 70]; 2-**ER**-10-16 is Fyk's October 10, 2023, Response to [D.E. 69], [D.E. 71]; 2-**ER**-7-9 is Fyk's December 15, 2023, Notice of Filing Supplemental Authority in Further Support of [D.E. 61] and [D.E. 66], [D.E. 73]; 1-**ER**-2-5 is Judge Gilliam, Jr.'s January 12, 2024, Order Denying [D.E. 61] and [D.E. 66], [D.E. 74]; and 4-**ER**-624-632 is Fyk's January 25, 2024, Notice of Appeal and Representation Statement, [D.E. 75].

[2] The first words of the "Nature of the Action" section of Fyk's Verified Complaint read as follows: "This case asks whether Facebook can, without consequence, engage in brazen tortious, unfair and anti-competitive, extortionate, and / or fraudulent practices… ." *See* [D.E. 1], 4-**ER**-596 at ¶ 1. The Second Claim for Relief

1

District Court's dismissal of the case without an opportunity for leave to amend based on Facebook's conclusory assertion that it was entitled to immunity under Title 47, United States Code, Section 230(c)(1).[3] The United States District Court for the Northern District of California (Judge Jeffrey S. White) exercised jurisdiction in this case under Title 28, United States Code, Section 1332, as the parties are diverse and the amount in controversy exceeds $75,000.00 exclusive of fees, costs, interest, or otherwise. Venue is proper in the Northern District of California pursuant to Title 28, United States Code, Section 1391(b), as Facebook's principal place of business is in this judicial district.

Fyk's second appeal derived from the District Court's (Judge White) error in divesting §230(c)(1) from the "Good Samaritan" requisite that *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019) requires for §230(c)(2) in denying the first Motion for Relief Pursuant to Rule 60(b) to Vacate

---

of Fyk's Verified Complaint is entitled "Violation of California Business & Professions Code Sections 17200-17210 (Unfair Competition)," *see id*. at 4-**ER**-616-618 at ¶¶ 58-66, and the correlated claims for relief are entitled: "First Claim for Relief - Intentional Interference with Prospective Economic Advantage / Relations," *see id*. at 4-**ER**-612-616 at ¶¶ 49-57; "Third Claim for Relief - Civil Extortion," *see id*. 4-**ER**-618-620 at ¶¶ 67-71; and "Fourth Claim for Relief - Fraud / Intentional Misrepresentation," *see id*. 4-**ER**-620-621 at ¶¶ 72-78.

[3] Hereafter, the germane subsection of the Title 47, United States Code, Section 230, the Communications Decency Act ("CDA") is drafted in shortest form. For example, 230(c)(1) will refer to Title 47, United States Code, Section 230(c)(1). As other examples, 230(f)(3) will refer to Title 47, United States Code, Section 230(f)(3).

and Set Aside Entry of Judgment [D.E. 46] filed on March 22, 2021, by Fyk.[4] The District Court's error was its failure to distinguish between the CDA's immunity afforded to Facebook (in certain circumstances discussed in [D.E. 46], 4-**ER**-532-594) for restricting *content* (in good faith) versus no immunity for the design / motivation of Facebook's *conduct,* which is essential to the CDA's immunity. The second appeal challenged the Order denying relief [D.E. 51], 3-**ER**-513-514,[5] on the grounds that Facebook's misstatement of "facts" was adopted without analysis by

---

[4] 4-**ER**-532-594 is the first Motion for Reconsideration, [D.E. 46], dated March 22, 2021; 4-**ER**-528-531 is Facebook's April 5, 2021, Response to the first Motion for Reconsideration [D.E. 47]; 3-**ER**-515-526 is Fyk's April 12, 2021, Reply to Facebook's April 5, 2021, Response, [D.E. 48]; 3-**ER**-513-514 is the District Court's November 1, 2021, Order Denying Motion for Relief Pursuant to Fed. R. Civ. P. 60(b), [D.E. 51]; 3-**ER**-480-512 is Fyk's March 3, 2022, Opening Brief in that second appeal (No. 21-16997); 3-**ER**-449-479 is Facebook's May 4, 2022, Answering Brief to the Opening Brief in the second appeal; 3-**ER**-424-448 is Fyk's May 25, 2022, reply in that second appeal; and 3-**ER**-421-423 is this Court's October 19, 2022, Memorandum, *sua sponte* denying the appeal based on Fyk supposedly putting *Enigma* to use too late. For a fuller recitation of the procedural posture of this nearly six-year-old case (namely all the briefing, at District Court and Circuit Court levels in the first appeal, No. 19-16232, that flowed from Judge White's erroneous June 18, 2019, dismissal of the Verified Complaint, *see* [D.E. 38] – [D.E. 39]), we respectfully refer the Court to Fyk's January 31, 2024, Mediation Questionnaire submitted in this third appeal.

[5] The District Court's failure to apply this Court's *Enigma* decision, which was / is controlling authority in the Ninth Circuit, compelled Rule 60(b)(5) relief here.

Judge White,[6] a result inconsistent with the CDA.[7] In the second appeal, this Court did not address the merits, deciding instead that Fyk did not timely assert *Enigma* (the premise of "Good Samaritanism"), even though Fyk specifically and independently raised the "Good Samaritan" general provision in his first reply brief to this Court.[8] Judge White later recused himself as "disqualified."

In this third appeal, Fyk challenges the District Court's (Judge Gilliam, Jr.) January 12, 2024 Order [D.E. 74], 1-**ER**-2-5, on a Rule 60(b) motion [D.E. 61], 2-**ER**-57-240 and 3-**ER**-242-420**,** and Rule 5.1 constitutional challenge [D.E. 66], 2-**ER**-28-37, in which the District Court **(a)** summarily adopted the conclusion, without analysis, of Judge White's November 1, 2021, Order [D.E. 51], 3-**ER**-513-

---

[6] The District Court's continued factual misstatements based on Facebook's mischaracterizations, rather than Fyk's factual allegations in his Verified Complaint (to be considered true for the purposes of a Rule 12(b)(6) motion), warranted Rule 60(b)(3) relief. The District Court should have accepted Fyk's Verified Complaint allegations as true and, correspondingly, accepted Fyk's framing of the case (a case focused on Facebook's illegal *conduct*, not Fyk's *content*), not Facebook's reframing of the case (*i.e.*, Facebook's misclassifying this case as of a §230(c)(1) ilk).

[7] In the District Court and in this Court, there has never been a single hearing for Fyk (nor any leave to amend for Fyk) to present arguments and / or facts **(a)** concerning Fyk's contentions as to how the CDA was misapplied, **(b)** elucidating the reality that the Verified Complaint's causes of action are based on Facebook's *conduct*, not Fyk's *content*, and / or **(c)** potentially adding to the causes of action set forth in the Verified Complaint (*e.g.*, negligent design, yet another cause of action having nothing to with a user's content but rather an interactive computer service provider's conduct; *i.e.*, yet another cause of action not subject to CDA immunity, *see, e.g., Lemmon, et al. v. SNAP, Inc.*, 995 F.3d 1085 (9th Cir. 2021)).

[8] "[W]e will not consider any claims that were not actually argued in appellant's opening brief." 9th Cir. June 12, 2020, Memorandum [D.E. 42] at n. 2.

514, concerning the (mis)application of §230's "Good Samaritan" general provision; **(b)** found that no extraordinary circumstances existed without applying the *Phelps* factors and instead simply disregarded Fyk's motion as a "losing party simply disagreeing with an adverse judgment;"[9] and **(c)** chose to not "take up" Fyk's non-forfeitable Rule 5.1 constitutional challenge merely because this case had been previously dismissed.

More specifically, the District Court's "Analysis" section of the January 12, 2024, Order, states: "The Court denies Plaintiff's Rule 60(b)(5) motion on *the same basis* underlying the November 2021 denial …." [D.E. 74] at 2, 1-**ER**-3 (emphasis added). The District Court concluded: "A losing party simply disagreeing with an adverse judgment is ordinary, not extraordinary…." (*id.* at 4, 1-**ER**-5) and "[a]ccordingly, there is no basis for taking up Plaintiff's freestanding 'motion re: the (un)constitutionality' of §230(c)(1), and that motion, Dkt. No. 66, is **TERMINATED**." *Id.* at 4, 1-**ER**-5 (emphasis in original).

This Court has jurisdiction pursuant to Title 28, United States Code, Section 1291 and its review of the Order is under an abuse of discretion standard. *See, e.g.*, *Starr v. City of Angels Camp*, 99 Fed.Appx. 792, 793 (9th Cir. 2004).

On January 25, 2024, Fyk filed his Notice of Appeal from a Judgment or Order of a United States District Court, along with his Representation Statement. 4-**ER**-

---

[9] *See* n. 10, *infra*.

624-632. On January 26, 2024, the Time Schedule Order was entered, prescribing March 8, 2024, as Fyk's opening brief deadline.

## II.  ISSUES PRESENTED

The Order at issue on this appeal (entered by Judge Haywood S. Gilliam, Jr., of the Northern District of California Court on January 12, 2024 [D.E. 74], 1-**ER**-2-5), concerns whether **(a)** the District Court's order on the application of §230(c)'s "Good Samaritan" general provision / intelligible principle, improperly deprived Fyk of his constitutionally guaranteed right of Due Process, and therefore should have merited review as "extraordinary circumstances" within the ambit of Rule 60(b)(6);[10] and **(b)** whether the Order was amiss in failing to consider (*i.e.,* forfeit) Fyk's *non-forfeitable* Rule 5.1 constitutional challenge[11] merely because this case had been previously dismissed.[12] This appeal asks:

---

[10] The District Court did not engage in any analysis of the "extraordinary circumstances" factors set forth in *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009). It was improper for the District Court to not examine a single actual *Phelps* factor, but instead base the 60(b)(6) "analysis" on a gauge of Fyk's displeased emotional state.

[11] The constitutional challenge derives from the doctrines of Non-Delegation / Major Questions, Void-for-Vagueness, and Substantial Overbreadth Doctrines and several canons of statutory construction noted in Sections V.B and V.C below.

[12] A Rule 5.1 constitutional challenge is premature until the parties have fully exhausted briefing / fully developed the case. *See, e.g., Anderson v. Municipality of Anchorage*, No. 3:21-cv-00139-JMK, 2023 WL 2932962 (D. Alaska Apr. 13, 2023). Judge White dismissed Fyk's Verified Complaint on June 18, 2019, *see* [D.E. 38] – [D.E. 39], and this case has never been heard on the substantive merits of the verified complaint. Moreover, as will be discussed in greater detail below, it was not until

**(1)**     In denying Fyk's Second Motion for Reconsideration [D.E. 61], 2-**ER**-57-240 and 3-**ER**-242-420, under Rule 60(b)(5), did the District Court err in denying Fyk of his constitutional Due Process rights, by determining the "Good Samaritan" general provision overarching all of §230(c) is only applicable to one subsection (§230(c)(2)) rather than both subsections (§230(c)(1) and §230(c)(2))? Even more specifically, did the District Court err in deciding that this Court's *Enigma Software Group USA, LLC v. Malwarebytes, Inc.*, 946 F.3d 1040 (9th Cir. 2019), cert. denied *via Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13 (2020) decision (holding that there is no §230(c) immunity where the conduct of the party invoking the CDA's civil liability protection is alleged to be grounded in an anti-competitive animus) is narrowly limited to instances in which the party invoking the CDA's civil liability protection has raised §230(c)(2) as an affirmative defense,

---

years after the June 18, 2019, dismissal (apparently the date on which Judge Gilliam, Jr. believes Fyk's ability to lodge a Rule 5.1 constitutional challenge was forfeited) that Judge White rendered his November 1, 2021, decision [D.E. 51], 3-**ER**-513-514 (unconstitutionally holding that §230(c)'s "Good Samaritan" general provision is not general; *i.e.*, somehow only applies to §230(c)(2)) that lent itself to Fyk's Rule 5.1 constitutional challenge. Then, the parties were obliged to fully brief that November 1, 2021, Judge White decision before Fyk was eligible to lodge a constitutional challenge concerning same. In sum, and as will be discussed in greater detail below, Fyk was not allowed to advance a Rule 5.1 constitutional challenge any sooner than he did, and the District Court erred in concluding that a dismissal from four years ago somehow forfeited / terminated Fyk's non-forfeitable Rule 5.1 rights years before the constitutional question even arose or could have been known in precognitive fashion.

7

rather than also applicable to instances in which the defendant has raised §230(c)(1) as a "backdoor" affirmative defense?

Did the District Court err in failing to address other circuit court cases addressing the issues more squarely and in a manner consistent with the letter and spirit of the law, such as the conflicting Fourth Circuit's *Henderson, et al. v. Source for Public Data, L.P., et al.*, 53 F.4th 110 (4th Cir. 2022) decision making clear, among other things (like the proper interpretation / application of §230 as a whole), that the proper application of §230(c) involves applying the "Good Samaritan" general provision / intelligible principle to both §230(c)(1) <u>and</u> §230(c)(2)?[13] How

---

[13] In *Henderson*, the Fourth Circuit unraveled (*i.e.,* re-contextualized) its own *Zeran v. AOL*, 129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) decision, which such *Zeran* decision has underlain Facebook briefing and has been at the root of District Court decision-making. As recognized by the Fourth Circuit in *Henderson*, the Fourth Circuit's *Zeran* decision was outdated. For example,

> "Drawing this line here [*i.e.,* where "[a]n interactive service provider becomes an information content provider whenever their actions cross the line into substantively altering the content at issue in ways that make it unlawful"] is reinforced by another contextual reading of Zeran's list of traditional editorial functions. After listing some traditional editorial functions for which liability is barred, Zeran then said that §230(c)(1) prevents suits that "cast [the defendant] in the same position as the party who originally posted the offensive messages." *Id*. at 333. Zeran saw §230(c)(1) as vicarious liability protection that could not be used as a shield when the offensiveness of the message comes from the defendant [*i.e.,* their own conduct] themselves rather than a third party. *See id.*; *see also Nemet*, 591 F.3d at 254… .

*Henderson*, 54 F.4th at n. 26.

can it be constitutional if the law is applied properly in one jurisdiction (*e.g.*, the Fourth Circuit) and not another (*e.g.*, the Ninth Circuit)?

Did the District Court err in ignoring the contemporaneous decisions by jurists within the same district court? For example, Judge William Alsup's *Dangaard, et al. v. Instagram, LLC, et al.*, No. C 22-01101 WHA, 2022 WL 17342198 (N.D. Cal. Nov. 30, 2022) decision (an anti-competitive animus case on all fours with this case), which such decision properly made clear that an interactive computer service provider (such as Facebook) cannot misclassify a claim as a §230(c)(1) case (rather than a §230(c)(2) case) in order to try to "backdoor" / circumvent the "Good Samaritan" general provision overarching all of §230(c), which such backdoor misclassification occurred here.

Did the District Court improperly ignore other cases at issue / discussed in Fyk's Second Motion for Reconsideration [D.E. 61] (*e.g.*, *Rumble, Inc. v. Google, LLC*, No. 21-cv-00229-HSG, 2022 WL 3018062 (N.D. Cal. Jul., 29, 2022); *DZ Reserve, et al. v. Meta Platforms, Inc.*, No. 3:18-cv-04978-JD, 2022 WL 912890 (N.D. Cal. Mar. 29, 2022); *Lemmon, et al. v. SNAP, Inc.*, 995 F.3d 1085 (9th Cir. 2021))? Other than a short-shrift mention of *Lemmon*, the District Court's January 12, 2024, Order [D.E. 74] did not even address the other aforementioned cases.

**(2)**	In denying Fyk's Second Motion for Reconsideration [D.E. 61] under Rule 60(b)(6), did the District Court err / abuse its discretion in refusing to consider

9

the factors for analyzing the extraordinary circumstances of this case (*e.g.*, deprivation of constitutional rights, miscarriage of justice) by dismissing Fyk's Rule 60(b)(6) efforts as nothing more than the mere dissatisfaction of an "ordinary" sore loser?

**(3)**     In denying Fyk's Rule 5.1 Constitutional Challenge [D.E 66], 2-**ER**-28-37, did the District Cour err in "terminating" the *non-forfeitable* right that is a Rule 5.1 constitutional challenge, ignoring the fact that a law delegating administrative prior restraint authority (which is what the CDA is) without a general provision / intelligible principle is unconstitutional (*i.e.,* forbidden)? *See, e.g., Jarkesy, et al. v. SEC*, 34 F.4th 446 (5th Cir. 2022),[14] a decision that was set forth in the parallel and concurrent Second Motion for Reconsideration [D.E. 61].

## III.   STATEMENT OF THE CASE / RELEVANT FACTS

Between 2010 and 2016, Facebook implemented a paid-for anticompetitive (content development / content provision) advertising program (*i.e.,* Facebook's

---

[14] The holding of *Jarkesy* is not just a Fifth Circuit outlier or a mere academic exercise, it is the law of the land.  *See, e.g., J.W. Hampton, Jr. & Co. v. U.S.,* 276 U.S. 394, 409 (1928) ("If Congress shall lay down by legislative act an intelligible principle to which the person ... is directed to conform, such legislative action is not a forbidden delegation of legislative power").

10

advertising program was deliberately designed to facilitate anticompetitive conduct).

Facebook began selling enhanced distribution, distribution it had previously offered for free and, in doing so, Facebook became a direct competitor to all its users, like Fyk. Facebook's new "sponsored" advertising business partnership program (*i.e.,* its product) "create[d] a misalignment of interests between [Facebook] and people who use [Facebook's] services," Mark Zuckerberg, *Understanding Facebook's Business Model* (Jan. 24, 2019), which incentivized(s) Facebook to selectively and tortiously interfere with competitive users' ability to monetize by artificially restricting (*i.e.,* (de)developing) the distribution[15] of low-paying / less favored users' materials, in favor of *developing* Facebook's higher paying "sponsors" / "high[er] quality participant['s] [materials] in the ecosystem." Mark Zuckerberg Interview / Public Discussion With Mathias Döpfner (4/1/19). *See, e.g.,* 4-**ER**-599-600 at ¶¶ 17-18.

---

[15] Indeed, Facebook has outright admitted to its anti-competitive animus / design flaw. For example: "… so going after actors who repeatedly share this type of content [*e.g.*, financially motivated / competitive], and ***reducing their distribution, removing their ability to monetize, removing their ability to advertise is part of our strategy.***" ~ Tessa Lyons (Facebook). Or, as another example:

> … for the financially motivated actors, their goal is to get a lot of clicks so they can convert people to go to their websites, which are often covered in low quality [non-competitive] ads, and they can monetize and make money from those people's views, and If we can reduce the spread of those links, we reduce the number of people who click through, and ***we reduce the economic incentives that they have to create that content in the first place***.

~ Tessa Lyons (Facebook).

11

Although Fyk reluctantly opted into Facebook's business "protection" / extortion program at a relatively low amount of money (in comparison to others, such as Fyk's competitor), Facebook reduced the distribution / availability of Fyk's pages / businesses by over 99% overnight. *See, e.g.,* 4-**ER**-600-601 at ¶¶ 19-21. Then, in October 2016, Facebook fully de-activated (*i.e.,* "restricted access to or availability of [Fyk's] materials") several of Fyk's pages / businesses, totaling over 14,000,000 fans cumulatively, under the fraudulent aegis of "good faith" content policing pursuant to §230(c)(2)(A). *See, e.g.,* 4-**ER**-601-603 at ¶¶ 21-22. Facebook's content policing, however, was not uniformly applied or enforced because of Facebook's unquenchable thirst for financial gain – its anticompetitive animus. *See, e.g.*, 4-**ER**-603-609 at ¶¶ 23-40.

In February and March of 2017, Fyk contacted a business colleague (now competitor) who was favored by Facebook, having paid over $22,000,000.00 for Facebook's advertising content development. Fyk's competitor had dedicated Facebook representatives directly available to them, whereas Fyk was not offered the same level of services. Fyk asked his competitor if they could possibly have their Facebook representative restore Fyk's unpublished and / or deleted pages for Fyk. Facebook's response was to decline Fyk's competitor's request unless Fyk's competitor was to take ownership of the unpublished and / or deleted content / pages

(*i.e.,* Facebook conspired with Fyk's competitor *outside of the Internet*, to help[16] Fyk's competitor, and to force Fyk out of business by rerouting Fyk's businesses / property to the competitor who compensated Facebook far more). Facing no equitable solution, Fyk fire sold his businesses / pages / property to his competitor. Shortly thereafter, Facebook restored (materially / divisibly contributing to the development / availability / functionality of Fyk's information – *i.e.,* the information content provision line was crossed) the *exact same* (*i.e.*, in physical form(at), not function(ality)) content that Facebook had previously maintained was purportedly violative of its Community Standards (*i.e.*, implicating §230(c)(2)(A) "protections," if any CDA protections, but certainly not §230(c)(1) "protections") and affirmatively restricted Fyk's materials while owned by Fyk but not when in the hands of Fyk's higher paying competitor (*i.e.,* disparate treatment / conduct). Facebook's preferred (*i.e.*, higher paying – helped) "Sponsored Advertisers" do not suffer the same consequences as (*i.e.,* lower paying – unhelped) users like Fyk, because of Facebook's anticompetitive animus / design / strategy. *See, e.g.,* 4-**ER**-610-612 at ¶¶ 41-47.

On August 22, 2018, Fyk sued Facebook in the District Court, alleging unfair competition, tortious interference with his economic advantage / relations, fraud, and

---

[16] "It follows that Meta defendants *cannot help* OnlyFans violate laws of general applicability and hide behind the CDA to avoid liability itself." *Dangaard*, 2022 WL 17342198, at *5 (citing *Roommate[s]*, 521 F.3d at 1164).

extortion based on Facebook's *prima facie* anti-competitive animus / conduct. *See* 4-**ER**-612-621 at ¶¶ 49-78. Facebook filed a Rule 12(b)(6) motion, based largely (almost entirely) on §230(c)(1) immunity. *See* [D.E. 20]. The District Court continued the proceedings, then vacated oral arguments and granted Facebook's motion on the papers, without affording Fyk leave to amend the Verified Complaint. *See* [D.E. 38]. The District Court's dismissal Order misinterpreted / misapplied §230(c) protection / immunity and distorted the facts of the case. *See id.*

Fyk appealed to this Court. The Ninth Circuit panel affirmed the District Court decision (again without oral argument) in a cursory five-page Memorandum arbitrarily determining Facebook's affirmative anticompetitive conduct (on and off the Internet) did not meet the content development / provision threshold. Fyk filed a Petition for Hearing *En Banc*, which was summarily denied on July 21, 2020. The Ninth Circuit's discretionary affirmation of dismissal stood in stark contravention of the Ninth Circuit's own interpretation / application of §230 in another concurrent anti-competitive animus case (*Enigma*).[17]

On November 2, 2020, Fyk filed a Petition for Writ of Certiorari in the SCOTUS (the "Petition #1"). Notwithstanding Justice Thomas' October 13, 2020, invitation for the SCOTUS to take up an appropriate case wherein the "correct

---

[17] This appeal's ER does not include the first appeal, as that would have made for an already voluminous ER here to be way too voluminous. Upon this Court's request, however, Fyk would certainly amend this appeal's ER to include same.

interpretation of §230," *Malwarebytes*, 141 S.Ct. at 18, could be assessed (which such interpretation Fyk has provided to the California courts time after time during the approximate six-year pendency of this case), the SCOTUS denied Fyk's Petition without comment.[18]

With case law having evolved since the time the District Court dismissed Fyk's case against Facebook (along with other bases for reconsideration under Rule 60), on March 22, 2021, Fyk filed his first Motion for Reconsideration. By Order dated November 1, 2021, the District Court cursorily denied same, prompting Fyk to lodge another appeal with this Court on December 1, 2021. The District Court's denial of Fyk's first Motion for Reconsideration ignored (and / or cursorily misapplied) this Circuit's controlling authority, namely this Court's *Enigma* decision. This prompted Fyk's second appeal.[19]

In the second appeal, Fyk sought the opportunity to have his case heard on the merits *via* the application of controlling authority of this Circuit, and, in doing so, giving effect to Fyk's constitutionally guaranteed Due Process rights. This is especially so, considering this Court handed down a different fate to Enigma than Fyk in *identical* anti-competitive animus circumstances. But this Court did not even

---

[18] *See* n. 17, *supra*. Similarly, this appeal's ER (already voluminous as is) does not include either of Fyk's two SCOTUS Petition books; but, upon this Court's request, Fyk would certainly amend this ER to include the two books.

[19] *See* n. 4, *supra*, setting forth the ER associated with the second appeal proceedings.

address the merits of Fyk's second appeal, this Court instead *sua sponte* decided Fyk put this Court's *Enigma* decision (*i.e.,* the "Good Samaritan" provision) to use too "late,"[20] denying Fyk's second appeal by Memorandum dated October 19, 2022. *See* 3-**ER**-421-423. This prompted Fyk to promptly file another Petition for Writ of Certiorari to SCOTUS ("Petition #2). On April 17, 2023, SCOTUS decided not to entertain Petition #2, denying same without comment, notwithstanding the fact that Fyk's second petition would have *resolved the entire Internet problem* in one fell swoop had SCOTUS entertained same (just as this Court's proper decision-making here would resolve the entire Internet problem in one fell swoop).

In the time following this Court's October 19, 2022, Memorandum denying Fyk's second appeal and throughout the pendency of Fyk's second go-round with SCOTUS (during which time this Court and the District Court were divested of jurisdiction), case law unfolded supportive of the positions Fyk has advanced in

---

[20] The premise of the *Enigma* decision is the application of the "Good Samaritan" general provision. Strangely, this Court did not consider the "Good Samaritan" provision for Fyk when he first raised it in his first reply brief, then determined Fyk raised *Enigma* (the "Good Samaritan" provision) too late, simply because the Ninth Circuit and SCOTUS decided *Enigma* later in time. *See* 3-**ER**-421-423. The "Good Samaritan" provision has never been considered as it applies to Fyk's case, despite the provision having being raised *four times* now; (1) when Fyk asserted Good Samaritanism in his first reply brief to this Court; (2) then again when the District Court (Judge White) dismembered the general provision from 230(c)(1); (3) then again when this Court *sua sponte* dismissed Fyk based on the timeliness of asserting *Enigma*; (4) then again when the District Court (Judge Gilliam) dismissed Fyk's Rule 5.1 constitutional challenge of the general provision's application.

California courts for years (in fact, such decisions very well could have been cut-and-pasted from Fyk's briefing within California's courts); *e.g.*, *Henderson* (4th Cir. Nov. 3, 2022) and *Dangaard* (N.D. Cal. Nov. 30, 2022).

In the time following the District Court's November 1, 2021, Order (3-**ER**-513-514) and throughout the pendency of Fyk's second petition for writ to SCOTUS, more case law following *Henderson* and *Dangaard* had unfolded supporting the positions Fyk had advanced; *e.g.*, *Rumble* (N.D. Cal. Jul. 29, 2022), *DZ Reserve* (N.D. Cal. Mar. 29, 2022), *Doe v. Facebook, Inc.*, 142 S.Ct. 1087 (Mar. 7, 2022) (J. Thomas Statement). On May 4, 2021, the Ninth Circuit rendered its *Lemmon* decision which the District Court ignored in rendering its November 1, 2021, denial of Fyk's first Motion for Reconsideration. Following SCOTUS' April 17, 2023, denial of Fyk's Petition #2, Fyk promptly filed his Second Motion for Reconsideration [D.E. 61], 2-**ER**-57-240 and 3-**ER**-242-420 (at issue on this appeal) in the District Court on June 16, 2023.

In this third appeal, Fyk requests the same law / justice that this Court afforded Enigma, for example, *see Enigma* (no CDA immunity where a defendant's anti-competitive animus is central to the wrongs complained of by the plaintiff), and an analysis of the CDA's (in)applicability to the allegations against Facebook that the District Court (Judge Alsup) afforded to Dangaard (under virtually identical circumstances).

## IV.  SUMMARY OF THE ARGUMENT

As discussed in **Section V.A** below, the District Court erred in denying Fyk's request for Rule 60(b)(5) relief by limiting this Court's *Enigma* 230(c) holding to only a §230(c)(2) setting (by rubberstamping Judge White's decisions from years ago), notwithstanding the unconstitutionality of such application of a general provision; *i.e.*, by deciding that the "Good Samaritan" general provision / intelligible principle overarching all §230(c) does not apply to both §230(c)(1) and §230(c)(2). This Court's *Enigma* holding was not exclusive to a §230(c)(2) setting, as confirmed by other cases since (*e.g.*, *Henderson* and *Dangaard*) and, as to the only harmonious and constitutional reading of *Enigma* – this Court, in *Enigma*, properly applied the "Good Samaritan" general provision / intelligible principle overarching all of §230(c) (both §230(c)(1) and §230(c)(2)) to the reality that interactive computer service ("ICS," Facebook here) actions driven by anti-competitive animus are the antithesis of "Good Samaritanism" and are accordingly entitled to no §230(c) immunity at the onset of dismissal / immunity consideration. As discussed in Section V.A below, applying *Enigma* properly (and / or applying *Henderson* properly, and / or applying *Dangaard* properly, and / or applying *Jarkesy* properly, and / or *et cetera*), Fyk was / is plainly entitled to Rule 60(b)(5) relief by way of a proper application of the "Good Samaritan" general provision to his case.

18

As discussed in **Section V.B** below, the District Court erred in determining that Judge White's June 18, 2019, dismissal [D.E. 38] extinguished (*i.e.,* forfeited) Fyk's ability to advance a *non-forfeitable* Rule 5.1 constitutional challenge [D.E. 66], 2-**ER**-28-37. In June 2019, the merits of this case had not been developed, and a Rule 5.1 constitutional challenge is not supposed to transpire until such development has occurred. *See* n. 12, *supra*. Had Fyk advanced his Rule 5.1 constitutional challenge any sooner than he did, it would have been denied without prejudice as premature. Fyk brought his Rule 5.1 constitutional challenge (again, which is a *non-forfeitable* right … the constitution cannot be forfeited, ever) precisely when he should have. As discussed in Section V.B below, the District Court should not have terminated Fyk's non-forfeitable Rule 5.1 constitutional challenge, especially without any meaningful analysis of the challenge.

As discussed in **Section V.C** below, the District Court erred in denying Fyk's request for Rule 60(b)(6) relief in deciding "extraordinary circumstances" were not present. The District Court did not engage in any analysis of the "extraordinary circumstances" guideline / considerations outlined by this Court in *Phelps*, but instead syllogistically asserted that no "extraordinary circumstances" existed because Fyk's unhappiness with losing (thus far) is "ordinary." As discussed in Section V.C below, applying the *Phelps* factors to this case, Fyk was / is plainly entitled to Rule 60(b)(6) relief just like Phelps was.

19

**V.    ARGUMENT**

**A.    The "Good Samaritan" General Provision Of Section 230(c) Is, In Fact, Generally Applicable To Section 230(c)(1) AND Section 230(c)(2) – Facebook Should Have Never Been Afforded CDA Immunity Vis-à-Vis Its Backdoor Misclassification Of This Case As A 230(c)(1) Case, Warranting R. 60(b)(5) Relief**

As *Jarkesy* (and other cases from across the nation for decades, *see, e.g.,* n. 14, *supra*) makes clear, Congress must supply an intelligible principle / general provision when it delegates administrative restraint authority (notably, when Facebook invoked §230's protections, it affirmatively acknowledged that it voluntarily chose to act as the *enforcer / instrument* of Congress; *i.e.,* to block and screen offensive materials). As *Jarkesy* concludes, if Congress does not supply an intelligible principle / general provision under such a delegation setting, then the law is unconstitutional. All §230(c) must be governed by the overarching "Good Samaritan" intelligible principle / general provision as Fyk's prior briefing consistently posits, and as Congress wrote the law, or the law is unconstitutional and Fyk's dismissal cannot stand.

Because a court should not turn to constitutional assessments unless absolutely necessary (per the Constitutional Avoidance Doctrine), we start with the proper application of §230(c)'s "Good Samaritan" general provision / intelligible principle – that is, the "Good Samaritan" general provision applies generally across §230(c)(1) and §230(c)(2), not to just §230(c)(2) as the District Court did in this

20

action [D.E. 51, 74]. Fyk's Rule 60(b) motion [D.E. 61] and Rule 5.1 constitutional challenge [D.E. 66] relate to the "Good Samaritan" intelligible principle / general provision applying to all of Title 47, United States Code, Section 230(c) ("CDA"), not just §230(c)(2).

Fyk's anti-competition / unfair competition claim (Count II of the Verified Complaint, [D.E. 1] at ¶¶ 58-66, 4-**ER**-616-618) is the antithesis of Good Samaritanism, and should have the same result as the *Dangaard* decision (involving Facebook / Meta) that unfair competition lawsuits are not subject to CDA immunity under §230(c)(1) and that this Court's *Enigma* decision applies equally to Fyk:

> While *Zango* and *Enigma* applied only to Section 230(c)(2), and the parties in *Enigma* were direct competitors, the same policy concerns arise here: Meta defendants' 'filtering practices [are] aimed at suppressing competition' in the online adult entertainment business. In fact, Meta defendants could have employed Section 230(c)(2) to attempt to defend themselves – they claim to be removing obscene material from their platforms in good faith, which is what Section 230(c)(2) immunizes. But they instead chose Section 230(c)(1) to shield themselves. ***To approve Meta defendants' CDA defense would make Section 230(c)(1) a backdoor to CDA immunity — 'contrary to the CDA's history and purpose.'*** Thus, congressional policy weighs heavily against Meta defendants' CDA defense.

*Dangaard*, 2022 WL 17342198, at *6 (emphasis added).

*Dangaard* is precisely our case, as discussed above in Section III. Facebook's "filtering practices [were] aimed at suppressing [Fyk as] competition in the online … [comedy] entertainment [/ advertisement] business." *Id.* "In fact, [Facebook] could have employed §230(c)(2) to attempt to defend [itself] – [pre-suit, Facebook]

21

claim[ed] to be [quashing Fyk's businesses / pages due to purported] obscenity [supposedly found within same]." *Id.* "But [in about-face fashion at the start of litigation in August 2018, Facebook] instead chose §230(c)(1) to shield [itself]. To approve [Facebook's] CDA defense would make §230(c)(1) a backdoor to CDA immunity – contrary to the CDA's history and purpose. Thus, congressional policy weighs heavily against [Facebook's] CDA defense." *Id.*

No difference exists between the theories of liability advanced in the *Dangaard* and *Fyk* cases,[21] yet, Dangaard received justice while Fyk was deprived

---

[21] Judge Alsup finally drew the content development / provision *hardline*, consistent with what Fyk has argued for years:

> Here, similarly, Meta defendants are not entitled to CDA immunity for operation of their filtering system. Like the defendant in *Roommate[s]*, which was alleged to have purposefully **designed its website to filter listings in a discriminatory manner**, *Meta defendants are alleged to have purposefully designed their platforms to filter posts and accounts in an anti-competitive manner* [such was the allegation here]. Although Meta defendants are not alleged to have augmented the posts **[i.e., changed its physical format]** or accounts themselves, '[their] connection to the [anti-competitive] filtering process is direct and palpable: [They] designed [their] [platforms] to limit the listings available to subscribers based on" ties to competitors of OnlyFans **[e.g., based on Facebook's ties to Fyk's competitor – Red Blue Media]**. While providing "neutral tools to carry out what may be unlawful or illicit [conduct] does not amount to 'development,'' Meta defendants are not alleged to have filtered pornographic content in a neutral manner. Plaintiffs allege that *Meta defendants' filtration tools are designed to facilitate anti-competitive conduct.* <u>Thus, Section 230(c)(1) is inapplicable here.</u> Id. at 1169 (emphasis in original); *see Barnes*, 570 F.3d at 1101 n. 3.

22

of his constitutional rights. That should not be, justice is not supposed to be administered in disparate fashion … justice is supposed to be administered consistently and level-handedly. Fyk simply asks that his claims be treated exactly as other litigants in this jurisdiction are treated.

The District Court's Order [D.E. 74], 1-**ER**-2-5, strangely ignored the same Judge's (Judge Gilliam, Jr.'s) own case (*Rumble*) along with the Northern District's *DZ Reserve* case, and chose not to apply this Court's *Lemmon* case, cited in Fyk's Second Motion for Reconsideration [D.E. 61] which constituted changes of law (along with *Henderson* and *Dangaard* and *Jarkesy*) since the time of the initial dismissal in June 2019 nearly five years ago.

---

*Dangaard*, 2022 WL 17342198, at *4 (emphasis added). Just like in *Dangaard,* Fyk alleged **(a)** "Meta defendants' filtration tools are designed to facilitate anti-competitive conduct." **(b)** "Meta defendants are not alleged to have augmented [Fyk's] posts or accounts themselves [*i.e.,* the format], [their] connection to the [anti-competitive] *filtering process* is direct and palpable: [They] designed [their] [platform] to limit [Fyk's materials] based on" ties to competitors of [Red Blue Media - Facebook's advertising business partners]." **(c)** "Meta defendants are not alleged to have filtered [Fyk's] content in a neutral manner." **(d)** Just as in *Dangaard*, the content's impropriety is irrelevant because the allegations are about Facebook's anti-competitive *conduct* / animus / filtration practices, not about the impropriety of any *content*, at all. **(e)** Facebook "could have employed Section 230(c)(2) to attempt to defend themselves," but instead "chose Section 230(c)(1) to shield themselves." **(f)** And this Court's approval of "Meta defendants' CDA defense [makes] Section 230(c)(1) a backdoor to CDA immunity — 'contrary to the CDA's history and purpose.' Thus, congressional policy weighs heavily against Meta defendants' CDA defense." Fyk's case is not just "similar" to *Dangaard*, it is essentially identical to *Dangaard.* And, just like in *Dangaard,* "Section 230(c)(1) is inapplicable here."

23

*Rumble* supports granting Fyk's Second Motion for Reconsideration [D.E. 61], 2-**ER**-57-240 and 3-**ER**-242-420, reversing dismissal, and remanding. The *Rumble* decision addresses whether a complaint involving unfair competition/antitrust allegations (Sherman Act in the *Rumble* case, California Business & Professions Code §§17200-17210 (Unfair Competition) in Fyk's case) is subject to dismissal. The district court in *Rumble* held, in pertinent part, as follows:

**(a)** "the Supreme Court's direction [is] that Sherman Act plaintiffs 'should be given the full benefit of their proof without compartmentalizing the various factual components and wiping the slate clean after scrutiny of each,'" *id*. at 6 (internal citations omitted);

**(b)** "This is especially true given the Ninth Circuit's holding that 'even though [a] restraint effected may be reasonable under section 1, it may constitute an attempt to monopolize forbidden by section 2 if a specific intent to monopolize may be shown,'" *id*. (internal citations omitted). These holdings are much like that of *Enigma* and *Fyk*. That is, actions underlain by anti-competitive animus (as specifically alleged by Fyk against Facebook, and as alleged by Rumble against Google) are not subject to dismissal at the CDA "Good Samaritan" immunity threshold. Just as Rumble was permitted to engage in discovery (*i.e.*, was "given the full benefit of their proof") vis-à-vis the District Court's denial of Google's motion to dismiss in a Sherman Act context (*i.e.,* federal anti-competition context), Fyk

24

should have been given the benefit of engaging in discovery (*i.e.*, "given the full benefit of [his] proof") vis-à-vis this Court's denial of Facebook's motion to dismiss in the California Business & Professions Code §§17200-17210 context (*i.e.*, state anti-competition context).

Next, *Lemmon* (9th Circuit) supports granting Fyk's Second Motion for Reconsideration [D.E. 61], reversing dismissal, and remanding, but the District Court declined to do so [D.E. 74]:

> Critically, the *Lemmon* court found that the cause of action at issue there did 'not seek to hold Snap liable for its conduct as [the] publisher or speaker,' because plaintiffs' 'negligent design lawsuit treats Snap as a products manufacturer, accusing it of negligently designing a product (Snapchat) with a defect (the interplay between Snapchat's reward system and the Speed Filter).'"

[D.E. 74] at 3, 1-**ER**-4 (citing *Lemmon,* 995 F.3d at 1092). That is the whole point – that is why *Lemmon* is relevant to this case, and the District Court's January 12, 2024, Order [D.E. 74] simply missed the point. The "negligent design" in *Lemmon* is the anti-competitive animus design at the heart of this case and at the heart of the *Dangaard* case:

> While providing 'neutral tools to carry out what may be unlawful or illicit [conduct] does not amount to 'development,'' Meta defendants are not alleged to have filtered [] content in a neutral manner. Plaintiffs allege that Meta defendants' filtration tools are *designed to facilitate anti-competitive conduct*. Thus, Section 230(c)(1) is inapplicable here.

*Dangaard*, 2022 WL 17342198, at *4 (emphasis added). Precisely – just as in *Lemmon* where "the cause of action at issue there did 'not seek to hold Snap liable

25

for its conduct as [the] publisher or speaker,'" [D.E. 74] at 3, 1-**ER**-4, and just as in *Dangaard* where "Meta defendants are not alleged to have filtered *content* in a neutral manner[, but, rather] allege[d] [to have] filtration tools [ ] designed to facilitate anti-competitive conduct," so too is the case with the Verified Complaint.

Fyk's Verified Complaint does *not* include causes of action seeking to hold Facebook liable for publishing / speaking; rather, the Verified Complaint's focus is on Facebook's facilitation of anti-competitive conduct. As with *Lemmon* and as with *Dangaard*, therefore, "Section 230(c)(1) is inapplicable here." This case (which, again, is nearly six years old) deserves to finally surpass the dismissal stage (just like the *Lemmon* and *Dangaard* cases, for examples) and move forward with the merits.

For approximately six years, Fyk has been saying precisely what *Dangaard* and *Lemmon* and *Enigma* and *Rumble* and *Henderson* and *Jarkesy* and *et cetera* have said as of relatively recently. Fyk has never once tried to somehow hold Facebook accountable for Fyk's publishing; rather, at all times Fyk has sought to hold Facebook accountable for its own illegal conduct / strategy / product design having nothing to do with Fyk's content.

The California courts distorted the facts of this case as actually alleged by Fyk in taking (the District Court, in particularly) Facebook's "factual" re-write hook, line, and sinker – again, never has Fyk sought to hold Facebook liable for its conduct as "the publisher or speaker" of his content, just as Lemmon never sought with Snap.

26

Fyk is "the publisher or speaker" of his own content, in accordance with a proper read of §230(c)(1). At all times, Fyk has sought to hold Facebook liable for unfair competition, tortious interference with economic advantage, fraud, and civil extortion as was alleged in Fyk's Verified Complaint. Fyk deserves the same Due Process afforded to Lemmon (and afforded to Enigma and afforded to Dangaard, and afforded to Henderson, and *et cetera*). That is why *Lemmon* was / is relevant in the reconsideration proceedings here, and the District Court completely missed the point as to same.

A law, such as §230(c) of the CDA, that delegates administrative restraint authority *is unconstitutional* if such law is not governed and guided by a general provision / intelligible principle and Fyk's constitutional rights (*e.g.,* Due Process) are *non-forfeitable*. Therefore, the "Good Samaritan" general provision / intelligible principle *must* apply to §230(c)(1) as well as to §230(c)(2) (*i.e.,* the "Good Samaritan" general provision *must* apply to Fyk's case), otherwise §230(c)(1) is unconstitutional.

**B.      *The Rule 5.1 Constitutional Challenge Was Not Forfeitable And Could Not Have Been Advanced Sooner Than It Was, Warranting R. 60(b)(5) Relief***

The District Court adopted Facebook's conclusory characterization that Facebook's acts here, which Fyk alleged were for Facebook's *commercial* purposes (*i.e.,* anti-competitive restraint of Fyk's businesses), are merely affirmative CDA enforcement acts immunized by §230(c)(1). The District Court erroneously asserted

27

that *Enigma's* "Good Samaritan" general provision / intelligible principle is only applicable to §230(c)(2); *i.e.*, the District Court looked no further and performed no analysis of whether Facebook qualified as a "Good Samaritan" as required by the CDA in the first instance, and concluded, without any analysis or authority, that the intelligible principle did not apply to (does not "exist" with respect to) §230(c)(1). The District Court's failure to engage in *any* analysis of the qualified entitlement to CDA protections resulted in a constitutionally repugnant application of a federal statute against Fyk, because it concretely and particularly deprived him of his Due Process rights by summarily concluding, on the pleading alone, that §230(c)(1) provides an entity (Facebook) with unilateral / unfettered prior restraint authority, contrary to the intelligible principle and "contrary to the CDA's history and purpose."

In *Jarkesy*, for example,[22] the legislature permitting a certain kind of activity (and then immunizing the actor from all civil liability associated with such activity) without a legislative guiding force in the form of an intelligible principle, renders the federal statute unconstitutional because the authority being exercised by the entity would be "unfettered." In *Jarkesy*, the Fifth Circuit found "[g]overnment actions are 'legislative' if they have the purpose and effect of altering the legal rights,

---

[22] *See* n. 14, *supra* (*Jarkesy* is not unique to the Fifth Circuit, the tenets espoused therein have been prescribed by SCOTUS for approximately one-hundred years).

duties and relations of persons ... outside the legislative branch." *Jarkesy*, 34 F.4th 446, 461. Here, the "rights, duties, and relations" between folks engaged with Facebook (here, Fyk) and Facebook were / are *prima facie* fundamentally altered vis-à-vis the CDA's grant of civil liability protection, to Facebook, for the prior restraint of Fyk's individual civil liberties.

The granting of statutory protection / immunity is a "legislative" power (both as to the immunity itself and as to the granting of same), and Congress can only grant legislative powers to another if such is accompanied by a guiding intelligible principle. *See id*. If a "legislative" power (such as statutory immunity / protection) is bestowed by Congress and not accompanied by an intelligible principle / general provision, then such power is deemed unconstitutional (*i.e., forbidden*). *See id.* at 462 ("If the intelligible principle standard means anything, it must mean that a total absence of guidance is impermissible under the Constitution"). Accordingly, it is the judiciary that is charged with *critically* reviewing whether the delegated agent / government instrumentality is operating within the bounds of both the law and the Constitution.

Hence, the District Court's dismissal affirmation and refusal to consider Fyk's constitutional challenge offend the Non-Delegation Doctrine, which provides that:

> Congress cannot delegate its legislative powers to other entities [*e.g.*, Section 230's 'voluntary' option to engage in a government mandate]. This prohibition typically involves Congress delegating its powers

to administrative agencies or to private organizations [*e.g.,* interactive computer service providers / users].

In *J.W. Hampton v. United States*, 276 U.S. 394 (1928), *the Supreme Court clarified that when Congress does give an agency [or instrumentality] the ability to regulate [i.e., restrain third-parties], Congress must give the agencies an 'intelligible principle' on which to base their regulations.*

In *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that 'Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested.'

https://www.law.cornell.edu/wex/nondelegation_doctrine (emphasis added).

The Supreme Court has recognized that Congress could not delegate powers that were 'strictly and exclusively legislative.' *Chief Justice John Marshall laid the groundwork for the 'intelligible principle' standard that governs non-delegation cases today. Marshall stated that if Congress delegates quasi-legislative powers to another body, it must provide a 'general provision' by which 'those who act' can 'fill up the details.' Therefore, Congress cannot give an outside agency free reign to make law, but it can authorize the agency to flesh out the details of a law Congress has already put in place. This became known as providing an 'intelligible principle' to which the agency is instructed to conform. The 'intelligible principle' could be anything in the 'public interest, convenience, or necessity' or considered 'just and reasonable.'* Being put in such subjective terms gives agencies vast discretion when enacting new rules.

https://definitions.uslegal.com/i/intelligible-principle/ (emphasis added).

The Court has contrasted the delegation of authority to a public agency, which typically is required to follow established procedures in building a public record to explain its decisions and to enable a reviewing court to determine whether the agency has stayed within its ambit and complied with the legislative mandate, with delegations to private entities, which typically are not required to adhere to such procedural safeguards.

https://constitution.congress.gov/browse/essay/artI-S1-1%202/ALDE_00000010/%5b'declaration',%20'of',%20'independence'%5d

Here, the "Good Samaritan" intelligible principle overarching all of §230(c) is undeniably present (indeed, Congress' draftsmanship could not have been clearer, the general provision is articulated in quotation marks for added emphasis) and was / is a constitutional absolute (under the Non-Delegation Doctrine, for example) given the administrative authority delegated to private corporations (here, Facebook) under the CDA by Congress. Judge White's / Judge Gilliam, Jr.'s misinterpretation of *Enigma* / misapplication of the "Good Samaritan" general provision (*i.e.*, Judge White's / Judge Gilliam, Jr.'s stripping the "Good Samaritan" intelligible principle from half of §230(c)) is wrong as a matter of law and it violates Fyk's and other similarly-situated parties' constitutional rights.

Further, the Major Questions Doctrine closely related to the Non-Delegation Doctrine, was recently addressed by SCOTUS in *National Federation of Independent Business, et al. v. Department of Labor, Occupational Safety and Health Administration, et al.,* No. 21A244 and *Ohio, et al. v. Department of Labor, Occupational Safety and Health Administration, et al.*, No. 21A247, 595 U.S. _____ (Jan. 13, 2022). In these cases, it was appropriate for SCOTUS to rein in administrative actions, like OSHA's attempt to mandate COVID-19 vaccination in certain settings. Similarly, here, private social media commercial enterprises function as quasi-governmental agencies (like OSHA) who must be controlled /

31

reined in; *i.e.*, not afforded unfettered §230 immunization / civil liability protection, as was wrongly afforded to Facebook by Fyk's Courts.

The aforementioned recent SCOTUS cases included a pertinent discussion of the Major Questions Doctrine tied to the aforementioned Non-Delegation Doctrine. The Major Questions Doctrine is conceptually as follows: "We expect Congress to speak clearly if it wishes to assign to an executive agency decisions of vast economic and political significance." *Id.* at 2 (internal citation omitted). Justice Gorsuch's discussion of the Major Questions Doctrine specifically relates same to the Non-Delegation Doctrine:

> In this respect, the major questions doctrine is closely related to what is sometimes called the nondelegation doctrine. Indeed, for decades courts have cited the nondelegation doctrine as a reason to apply the major questions doctrine. … Both are designed to protect the separation of powers and ensure that any new laws governing the lives of Americans are subject to the robust democratic processes the Constitution demands.

*Id.* at 4 (internal citation omitted).

The new "laws" (*e.g.,* Community Standards) created by large technology companies "govern[ ] the lives of [millions of] Americans [and must be] subject to the robust democratic processes the Constitution demands," like Due Process. Anybody with functioning dendrites and firing synapses recognizes that the "laws" created by large tech companies do anything but ensure constitutional freedoms. Applied here, and put more simply, CDA immunity implicates major questions

32

concerning Due Process, freedom of speech, *et cetera* – any law (*e.g.*, §230) that results in the deprivation of life, liberty, and / or property sans Due Process (*e.g.*, the deprivation experienced concretely and particularly by Fyk) is legally untenable. Justice Gorsuch aptly continued:

> The major questions doctrine serves a similar function [to the non-delegation doctrine] by guarding against unintentional, oblique, or otherwise unlikely delegations of the legislative power. Sometimes, Congress passes broadly worded statutes [like Section 230] seeking to resolve important policy questions in a field while leaving an agency to work out the details of implementation. … Later, *the agency may seek to **exploit** some gap, ambiguity, or doubtful expression in Congress's statutes to assume responsibilities far beyond its initial assignment.* The major questions doctrine guards against this possibility by recognizing that Congress does not usually 'hide elephants in mouseholes.'

*Id.* at 5 (internal citations omitted) (emphasis added).

First, as the District Court found in *Dangaard*, private actors (like Facebook in *Dangaard* and here) indeed have tried to **exploit** (and have succeeded in so exploiting thus far; *e.g.*, this case) gaps and / or ambiguities in the CDA. More specifically, as correctly determined by Judge Alsup in *Dangaard*, Facebook seeks to **exploit** maneuvering between §230(c)(1) and §230(c)(2) in "backdoor" fashion, which such "backdoor" maneuvering was properly determined by Judge Alsup to be "contrary to the CDA's history and purpose." *Dangaard*, 2022 WL 17342198, at *6. Here, then, just as in *Dangaard*, "congressional policy weighs heavily against Meta defendants' CDA defense." *Id.*

Second, exploitation by large technology companies (like Facebook here and in *Dangaard*) have taken the CDA "far beyond" what Congress originally could have plausibly intended. In *Dangaard*, the District Court did not permit large technology companies like Facebook to exploit the CDA beyond the law's "history and purpose."

Third, the well-being of the worldwide web and protecting (*i.e.*, immunizing) those who legitimately engage in trying to preserve a healthy Internet (as a "Good Samaritan" in "good faith") is "important policy." It is not only important to interactive computer service users (like Fyk) that this Court correctly applies the "Good Samaritan" general provision of §230(c) here, but it is also important to interactive computer service providers (like Facebook) and critical for the future of this country because **(a)** preservation of a healthy Internet in which users and providers co-exist is "important policy" in today's day and age, and **(b)** preservation of the Constitution (and related constitutional doctrines and canons) is "important policy" in today's day and age (all the way back to Day 1 of the United States of America, for that matter, as the Constitution is what makes America *free* and constitutional rights are accordingly *non-forfeitable*), again there being only one constitutionally sound way to go here – applying the general provision generally across all §230(c) as written by Congress, as intended by Congress, and as required by the law (*e.g.*, *J.W. Hampton, Jarkesy, et cetera*).

The SCOTUS concurring opinion in the aforementioned COVID-19 vaccination decision(s) continued:

> Whichever the doctrine, the point is the same. Both serve to prevent 'government by bureaucracy supplanting government by the people.' … And both hold their lessons for today's case. On the one hand, OSHA claims the power to issue a nationwide mandate on a major question but cannot trace its authority to do so to any clear congressional mandate. On the other hand, if the statutory subsection the agency cites really did endow OSHA with the power it asserts, that law would likely constitute an unconstitutional delegation of legislative authority. Under OSHA's reading, the law would afford it almost unlimited discretion – and certainly impose no 'specific restrictions' that 'meaningfully constrai[n]' the agency. … OSHA would become little more than a 'roving commission to inquire into evils and upon discovery correct them.' *A.L.A. Schechter Poultry Corp. v. United States*, 295 U. S. 495, 551 (1935) (Cardozo, J., concurring). Either way, the point is the same one Chief Justice Marshall made in 1825: There are some 'important subjects, which must be entirely regulated by the legislature itself,' and others 'of less interest, *in which a general provision may be made, and power given to [others] to fill up the details.' Wayman v. Southard*, 10 Wheat. 1, 43 (1825**).** And on no one's account does this mandate qualify as some 'detail.' The question before us is not how to respond to the pandemic, but who holds the power to do so. The answer is clear: Under the law as it stands today, that power rests with the States and Congress, not OSHA. In saying this much, we do not impugn the intentions behind the agency's mandate. Instead, we only discharge our duty to enforce the law's demands when it comes to the question who may govern the lives of 84 million Americans. Respecting those demands may be trying in times of stress. But if this Court were to abide them only in more tranquil conditions, declarations of emergencies would never end and the liberties our Constitution's separation of powers seeks to preserve would amount to little.

*Id.* at 6-7 (some internal citations omitted) (emphasis added). Spot on, we could

simply swap out "OSHA" with "interactive computer service" (Facebook, Twitter,

or Google, for examples) and come to an identical SCOTUS holding regarding the CDA.

The Internet is an indispensable aspect of life for most people and is much more than just some "detail." This appeal asks this Court to strictly enforce §230(c)'s general provision / intelligible principle (as it *must* constitutionally) as it is the only branch of government entrusted with the role of gatekeeper to prevent commercial actors from perverting §230(c)(1) and turning it into an exploitable "backdoor" "super-immunity."

The design of the CDA is Internet regulation by way of "blocking and screening of offensive material." The CDA contemplates protecting the "Good Samaritan" (whether that be the user or the online provider) who engages in the regulation / restraint of third-party's individual liberties that is "blocking and screening of offensive materials." Despite the CDA's "Good Samaritan" requirement, however, Fyk's courts erroneously deferred to Facebook without requiring a threshold showing of the private actor's entitlement to "Good Samaritan" status even where the allegations against the private actor (Facebook) here have consistently and clearly been that of anti-competitive motive.

Under the Major Questions Doctrine highlighted by SCOTUS as discussed above, one must be a congressionally appointed agency tasked with overseeing a regulatory act / law before a federal court even begins to consider yielding to one's

interpretation of that statute or regulation. Facebook is not an explicitly congressionally appointed "agency" in relation to the CDA.

In enacting the CDA, Congress did not appoint *any* overseeing agency (such as, *e.g.*, the Federal Communications Commission, "FCC," is to the Communications Act of 1934, or OSHA is to the Occupational Safety and Health Act), and Congress has not maintained oversight or regulation of the CDA on its own. But in function / in reality / in practice, somehow commercial industry giants, like Facebook, have absolutely morphed into Congress' CDA outsourced and industry self-regulating instrument.

In the absence of congressional oversight as to the application of the CDA, the judiciary is charged with the task of being the gatekeeper of whether the defendant actor is entitled to the CDA's specific civil liability protection narrowly conferred upon Good Samaritan actors who *neutrally* regulate content, in particularly because the burden shifts to a defendant raising §230(c) protection as an affirmative defense. Because Fyk alleged in his Verified Complaint that Facebook discriminately used its "policing" power against Fyk but not against another Facebook user who took ownership of the *same exact content* (distinguishable from Fyk only in that the other user *paid* Facebook more for commercial services), Fyk's courts wrongly gave deference to the private party (Facebook) to "enforce" the CDA by restraining Fyk.

37

The "Good Samaritan" blocking and screening decision-making, which is all of §230(c) (*i.e.*, §230(c)(1), §230(c)(2)(A), and §230(c)(2)(B)), cannot rightly be classified as anything less than decision-making of "vast economic and political significance." Under the Major Questions Doctrine, Congress had to "speak clearly if it wishe[d] to assign [ ] executive agency decision[-making] of vast economic and political significance" to Facebook. Congress did not; Big Tech "cannot trace its [unfettered] authority … to any clear congressional mandate." The Major Questions Doctrine and the Non-Delegation Doctrine require this Court to interpret and apply the "Good Samaritan" general provision / intelligible principle across all of §230(c) *as actually written by Congress* to ensure preservation of constitutionally protected individual civil liberties, such is the Court's duty.

There is only one construction of §230(c)(1) that is constitutionally sound – *Congress' articulated construction*. Courts need only apply the statute as written (*e.g.,* strictly as "the publisher or speaker," not sloppily as "a publisher") and as intended (*e.g.,* apply the statute's general provision "generally"); but, Court orders in Fyk's case have not applied the statute as written, or as intended, or in a constitutionally acceptable fashion, or in a legally required manner.

The Constitutional Avoidance Doctrine provides that "[w]hen the validity of an act … is drawn in question, and even if a serious doubt of constitutionality is raised [which Fyk has raised repeatedly] … [the Court] will first ascertain whether

a construction of the statute is fairly possible by which the question may be avoided."
https://www.law.cornell.edu/constitution-conan/article-3/section-2/clause-1/the-constitutional-doubt-canon (citing, *inter alia*, *Crowell v. Benson*, 285 U.S. 22, 62 (1932)). Consequently, per the associated Constitutional-Doubt Canon, "if a statute is susceptible to two plausible interpretations, one of which violates the Constitution, the Constitutional-Doubt Canon instructs courts to choose the interpretation consistent with the Constitution." *Id.* (myriad SCOTUS citations omitted).

There are two interpretations / applications of §230(c)(1) at play in this case: **(a)** Fyk's Courts' *unconstitutional* misconstruction, applying the subsection in a grammatically incorrect fashion (*e.g.*, as "a publisher," rather than as "the publisher" as actually written by Congress, with the one word making a critical difference as to the proper application) and based on the Courts' "absurd" interpretation as it relates to the Absurdity Doctrine (*e.g.,* "unfettered" blanket "super-immunity"); **(b)** Fyk's *constitutionally sound* construction, applying the subsection as it is written (*e.g.*, strictly as "the publisher or speaker") and based generally on Congress' articulated intent (*e.g.*, "Good Samaritan" general provision / intelligible principle).

***Fyk's construction is not just "fairly possible," it is the only possible construction that avoids a constitutional question and / or avoids contravening the constitutional doctrines or canons of statutory construction discussed above.*** The Constitutional-Doubt Canon accordingly instructs this Court to choose Fyk's

39

interpretation / application consistent with the Constitution (which, as discussed above, is also the interpretation / application of Judge Alsup in *Dangaard*, Judge Gilliam, Jr. in *Rumble*, the Fourth Circuit in *Henderson*, and this Court in *Lemmon* and *Enigma*, for examples). So, as Section V.A concluded, so too does this Section – Fyk's Rule 5.1 constitutional challenge [D.E. 66] was / is not some "freestanding" thing (as the District Court's January 12, 2024, Order [D.E. 74], 1-**ER**-2-5, wrongly called it), Fyk's Rule 5.1 constitutional challenge was / is inextricably intertwined, based on the circumstances at hand, with Fyk's Second Motion for Reconsideration [D.E. 61] and was advanced at the appropriate time (after all possible legal briefing, [D.E. 61], had unfolded; *i.e.*, after this case had been fully developed).

The CDA's "Good Samaritan" general provision and Fyk's Rule 5.1 constitutional challenge to the District Court's unconstitutional construction / application of §230 requires dismissal reversal and remand:

> Put simply, [Fyk's constitutional question] is a Catch-22: either the District Court was wrong about the application of Section 230(c)(1) (that is, wrong that Section 230(c)(1) is somehow not subject to the Section 230(c) "Good Samaritan" intelligible principle) or the federal statute is unconstitutional. Either way, the dismissal of Fyk's case was / is untenable and must be immediately overturned.

[D.E. 66], 2-**ER**-37.

There are no other choices, unless this Court is bound and determined to continue the miscarriage of justice and the deprivation of rights that Fyk has had to endure at immense cost, time, and hardship thus far. This Court should remand to

require the District Court to perform its solemn duty[23] to distribute justice equally as to the litigants before it and afford Fyk an opportunity to be heard on the merits.

## C. Deprivation Of Constitutional Rights And Miscarriage Of Justice Are "Extraordinary Circumstances" Warranting Rule R. 60(b)(6) Relief

The District Court Order [D.E. 74] at issue on this appeal engaged in no analysis of the "extraordinary circumstances" (Rule 60(b)(6)), instead declaring in substance and effect: "it's ordinary for the losing party to be displeased, not extraordinary." Without any analysis of Fyk's constitutional challenge, the District Court outright denied Fyk's Due Process rights. The District Court's order took on its own "extraordinary" action and threatened to strip Fyk's counsel of *pro hac vice* privileges for *defending* Fyk's constitutional rights if Fyk did not go away, which such threat was inappropriate. An appropriate analysis, like the *Phelps* "extraordinary circumstances" analysis, entails the Rule 60(b)(6) component of Fyk's Second Motion for Reconsideration. The factors involved in a proper *Phelps*-oriented "extraordinary circumstances" analysis are set forth and discussed below.

---

[23] When a Defendant invokes an affirmative defense, for a prior restraint, the United States has an *affirmative duty* to strictly protect Plaintiff's individual civil liberties (to counterbalance the State's affirmative defense authority), because of the special relationship it triggers between the State and its instrumentality, here Facebook. However, here, the District Court chose to protect Facebook regardless of its anti-competitive animus (*i.e.,* the District Court granted Facebook 230(c)(1) "super-immunity" without there being any showing of "good faith" and / or "Good Samaritan[ism]"), under the wrong statutory subsection, in contravention to applicable law and Fyk's constitutional rights.

41

Even if this Court were to deny the Rule 60(b)(5) aspect of Fyk's Second Motion for Reconsideration, it should still vacate the judgment under Rule 60(b)(6) to avoid a "manifest injustice" (*e.g.*, deprivation of constitutional rights). Rule 60 offers equitable relief to a party seeking to vacate a judgment to avoid "manifest injustice." *Latshaw v. Trainer Wortham Comp. Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006); *U.S. v. Washington*, 394 F.3d 1152, 1157 (9th Cir. 2005), overruled on other grounds in *U.S. v. Washington*, 593 F.3d 790 (9th Cir. 2010), *U.S. v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)).

Rule 60(b)(6) has been called "a grand reservoir of equitable power," and it affords courts the discretion and power "to vacate judgments whenever such action is appropriate to accomplish justice." *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009) (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005), quoting *Liljeberg v. Health Serv. Acquisition Corp.*, 486 U.S. 847, 864 (1988)). Under this standard, Rule 60 relief is not governed by any per se rule, but is to be granted on a case-by-case basis when the facts of a given case warrant such relief.

In *Phelps*, the Ninth Circuit set forth certain factors "designed to guide courts in determining whether ... extraordinary circumstances [as required for Rule 60 relief] have been demonstrated by an individual seeking relief under the rule." *Phelps*, 569 F.3d 1120. Courts should consider whether:

> (1) a litigant has diligently pursued relief that respects the strong public interest in timeliness and finality, (2) whether granting relief would

'undo the past, executed effects of the judgment, thereby disturbing the parties' reliance interest in the finality of the case, as evidence, for example, by detrimental reliance or a change in position and if (3) given, in the court's opinion, that a central purpose of Rule 60(b) is to correct erroneous legal judgments that, if left uncorrected, would prevent the true merits of a petitioner's constitutional claims from ever being heard[;] [i]n such cases, this factor will cut in favor of granting Rule 60(b)(6) relief.

*Phelps*, 569 F.3d at 1137-1140.

These factors all support Fyk's request for relief. First, Fyk has been diligent – he has not stopped his pursuit of justice for approximately six years (three stints in the District Court, two prior appeals before this Court, and two petitions for review before SCOTUS – a Herculean task).

Second, no party has detrimentally relied on the judgment where it would cause harm for the case to be litigated. Facebook's conduct has not changed in reliance on the Court's Order because the Order merely maintained the status quo prior to this action.

Third, this Court must correct the judgment to prevent a manifest injustice from continuing. Issues surrounding overly broad[24] CDA immunity are of national significance (garnering the attention of Congress) and courts in the Ninth Circuit

---

[24] Even the DOJ, in its *Gonzalez v. Google* amicus, has recognized that §230(c)(1) has been "applied beyond its proper bounds." And Senator Cruz, in his *Gonzalez* amicus, called §230(c)(1) "super-immunity." And Attorney General Paxton, in his *Gonzalez* amicus, called it "government-like" immunity. Fyk called it "sovereign-like" immunity, and now Judge Alsup calls it what it really is: a "backdoor to CDA immunity."

43

have inconsistently applied §230 protections for almost three decades, which has resulted in entrenched ongoing anti-competitive and discriminatory misconduct by interactive computer service providers like Facebook.

This Court should rein in commercial actors' exploitation of §230(c)(1) as unconstitutional. *See, e.g., Jarkesy* (relatively recent), *National Federation of Independent Business, et al. v. Department of Labor, Occupational Safety and Health Administration, et al.,* No. 21A244 and *Ohio, et al. v. Department of Labor, Occupational Safety and Health Administration, et al.*, No. 21A247, 595 U.S. _____ (Jan. 13, 2022) (relatively recent), and *J.W. Hampton.* (approximately one-hundred years old).

## VI.   CONCLUSION

This matter must be remanded to proceed on the merits, and the Rule 5.1 constitutional challenge must be certified as required by the rule. Subjecting a litigant to the sufferings of manifest miscarriages of justice for over half-a-decade is "extraordinary."

Deprivation of constitutionally guaranteed Due Process rights is "extraordinary." It is especially "extraordinary" when others in nearly identical (if not identical) circumstances have been afforded justice (*e.g.*, Lemmon, Enigma, Henderson, Dangaard).

While Fyk deserves justice (having patiently awaited same for nearly six years) under the Rule 60(b)(5) component of [D.E. 61] and / or per the Rule 5.1 grounds of [D.E. 66], this Court, if needed to effectuate such justice, should tap into the "grand reservoir of equitable power" that is Rule 60(b)(6). In the end, no matter the method (Rule 60(b)(5), Rule 60(b)(6), Rule 5.1, and / or anything else just, equitable, or proper), this Court is due to finally reverse the District Court's dismissal and remand this matter to the District Court to proceed on the merits; *i.e.*, this Court should finally "vacate judgment [ ] … to accomplish justice."

## STATEMENT OF RELATED CASES

Fyk is unaware of another case pending before this Court involving *the acute issues at play here*, though Fyk is indirectly, vaguely aware of perhaps a couple cases (not yet utilizable authority) pending in this Court implicating §230 to some extent.

March 8, 2024                          Respectfully Submitted,

*/s/ Constance J. Yu*
**Constance J. Yu, Esq.**
Attorneys for Plaintiff-Appellant, Fyk

*/s/ Jeffrey L. Greyber*
**Jeffrey L. Greyber, Esq.**
Attorneys for Plaintiff-Appellant, Fyk

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 8, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM / ECF system. Participants in the case who are registered CM / ECF users will be served by the appellate CM / ECF system.

*/s/ Constance J. Yu*
**Constance J. Yu, Esq.**
Attorneys for Plaintiff-Appellant, Fyk

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 24-465

I am the attorney or self-represented party.

**This brief contains** 11,542 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Constance Yu **Date** 03/08/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

47