Appeal No. 24-465

_____

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

## JASON FYK
*Plaintiff-Appellant,*

v.

## FACEBOOK, INC.
*Defendant-Appellee.*

_____

Appeal of January 12, 2024, Order Denying Motion for Relief Pursuant to Fed. R. Civ. P 60(B) and Terminating Motion Re: Constitutionality of 47 U.S.C. Sec. 230(C)(1) [D.E. 74] by Hon. Haywood S. Gilliam, Jr. of the U.S. District Court for the Northern District of California, 4:18-cv-05159-HSG

_____

## APPELLANT'S MOTION TO RECALL MANDATE
_____

**GREYBER LAW, PLLC**
Jeffrey L. Greyber, Esq. (*pro hac vice*)
jgreyber@greyberlaw.com
9170 Glades Rd., #161
Boca Raton, FL 33434
(561) 702-7673 (o)
(833) 809-0137 (f)

**PUTTERMAN | YU | WANG, LLP**
Constance J. Yu, Esq. (SBN 182704)
cyu@plylaw.com
345 California St., Suite 1160
San Francisco, CA 94104-2626
(415) 839-8779 (o)
(415) 737-1363 (f)

*Attorneys for Plaintiff-Appellant*

## **TABLE OF CONTENTS**

**PAGE**

I.    Summary Of Brief ……………………………………….. 1-2

II.    Legal Analysis ……………………………………… 2-13

    A.    Recalling Mandate …………………………………. 2-5

        1.  Jurisdictional Issues Cannot Be Waived ………….. 3-4

        2.  Errors Of Law Are Always Reviewable ………….. 4

        3.  Due Process & Constitutional Violations Cannot Be Waived ……………………………………… 4

        4.  Structural Or Plain Errors Are Not Subject To Waiver ……………………………………….. 4-5

    B.    Facebook's Motion To Dismiss And Judge White's Dismissal Order Wrongly Consider Section 230(c)(1) A Super-Immunity Somehow Standing Apart From 12(b) …………………………………………… 5-7

    C.    Courts Across The Nation (Including In California) Are Uniform In Recognizing Section 230(c)(1) For What It Is – It Is An Affirmative Defense To Liability, Not A "Sovereign" Immunity To Suit …………………………. 7-13

        1.  *Energy Automation Systems, Inc. v. Xcentric Ventures, LLC* (In-Depth Analysis Cited By The N.D. Cal. Court In *Levitt*) ………………………… 7-11

        2.  *Levitt v. Yelp! Inc.* (Misconstrued By Facebook And Judge White During Dismissal – Reversible Error, Never Addressed By This Court) …………………… 11-12

        3.  *Barnes v. Yahoo!, Inc.* (Misconstrued By Facebook And Judge White During Dismissal – Reversible Error, Never Addressed ……………………………. 12-13

By This Court)

    4. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.* (Misconstrued By Facebook And Judge White During Dismissal – Reversible Error, Never Addressed By This Court) ………………….. 13

III. Conclusion …………………………………………… 13-15

Certificate of Compliance ……………………………….... 16

## <u>TABLE OF AUTHORITIES / CITATIONS</u>

<u>**PAGE**</u>

*Case Law*

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th Cir. 2009) …………….. 5, 11-23

*Bell v. Thompson*, 545 U.S. 794, 804 (2005) ……………………… 3

*Energy Automation Systems, Inc. v. Xcentric Ventures, LLC*, No. 3:06-1079, 2007 WL 1557202, *12-15 (M.D. Tenn. May 25, 2007) ………………………………………………… 7-11, 13-14

*Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157 (9th Cir. 2008) ……………………………….. 12

*Levitt v. Yelp! Inc.*, No. C 10-1321MHP, 2011 WL 131532320, *6 (N.D. Cal. Mar. 22, 2011) ……………………………………….. 5-7, 11-12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 551 (E.D. Va. 2008) ……………………………………….. 5-6, 13-14

*Zeran v. AOL*, 129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998) ……………………………………………………….. 7

*Codes*

47 U.S.C. §230 ……………………………………………….... *passim*

***Rules***

Fed R. Civ. P. 12(b)(1) …………………………………………… 4, 6, 14

Fed. R. Civ. P. 12(b)(2) …………………………………………... 6, 14

Fed. R. Civ. P. 12(b)(6) …………………………………………… *passim*

Fed R. Civ. P. 56 …………………………………………….. *passim*

Fed. R. App. P. 32(a) …………………………………………… 16

## I.      Summary Of Brief

A key procedural error (nonforfeitable at any stage) occurred at the threshold of this case, and this reversible error is the focus of this brief. Plaintiff-Appellant, Jason Fyk ("Fyk"), has repeatedly addressed the error in his briefs in various ways, yet no court has ever addressed it. Every court involved has ignored the reversible threshold error discussed herein. This fundamental procedural error has tainted the case from the outset, and this motion to recall this Court's mandate represents Fyk's last opportunity before being forced to seek relief at SCOTUS (an incredibly expensive and time-consuming process) a third time.

It is critical that this Court address the District Court's key procedural mistake before Fyk must again petition SCOTUS (mandamus, certiorari, both). In a just system, this Court would recognize that the District Court's threshold procedural error fundamentally corrupted these proceedings for over six years, recall its mandate, and remand the case for discovery. This would eliminate the need for Fyk to burden SCOTUS yet again. At minimum, under SCOTUS' mandamus requirements, this Court should be given one last opportunity to correct the fundamental procedural mistake before resorting to SCOTUS.

The critical error is clear – the District Court improperly treated 47 U.S.C. §230(c)(1) as an absolute *immunity from suit* (akin to sovereign immunity) rather than as an affirmative defense to liability. Case law (nationwide and in California)

clearly establishes that §230(c)(1) is a defense to liability, not a jurisdictional bar to suit. Even the case law cited by Defendant-Appellee, Facebook, Inc. ("Facebook") and Judge White in dismissal confirms this.

The distinction is crucial and has skewed the entire case from the start. Facebook's dismissal briefing improperly treated §230(c)(1) as a standalone super-immunity from suit, separate from its 12(b)(6) briefing. Judge White followed this same procedurally flawed approach. But §230(c)(1) is not a blanket immunity from suit, it is a limited affirmative defense to liability requiring a merits-based factual inquiry and discovery before ruling.

At a minimum, Judge White was obligated to convert Facebook's standalone §230(c)(1) "sovereign" super-immunity 12(b)(6) argument into a Rule 56 motion, which he did not. Even if he had, summary judgment at the pleading stage would have been improper due to conflicting evidence, including Fyk's *Verified* Complaint, which constituted sworn evidence.

This case has been procedurally flawed from Day 1. In the interest of justice, the Ninth Circuit must recall its mandate and remand the case for discovery.

## II. Legal Analysis

### A. *Recalling Mandate*

A plaintiff cannot waive appellate rights concerning a District Court's fundamental 12(b) errors, particularly when the errors involve subject matter

jurisdiction, constitutional violations, or the misapplication of law. And while courts are proponents of finality, finality is not absolute – when a fundamental, threshold procedural mistake (*prima facie* reason to recall mandate) occurs that has infected an entire case (as here), recalling a mandate is warranted. The need to recall a mandate is further strengthened where (as here) the fundamental, threshold mistake at issue has broader legal implications and continues to cause harm (*e.g.*, preventing proper adjudication of §230 cases). And recalling a mandate is particularly appropriate where (as here) the fundamental error / mistake at issue stripped the litigant of legal remedy / due process.

A motion to recall a mandate is appropriate when a fundamental procedural defect undermined the integrity of the appellate process, and there is no set timeframe / deadline within which to file same. This Court has inherent authority to recall a mandate when necessary to prevent a miscarriage of justice. *See, e.g., Bell v. Thompson*, 545 U.S. 794, 804-805 (2005)). Here, this Court's rulings have been premised on a fundamentally flawed District Court 12(b) decision / foundation that violated Supreme Court precedent, Ninth Circuit precedent, and due process. Correcting this mistake is necessary before SCOTUS review.

### 1.     Jurisdictional Issues Cannot Be Waived

A court's lack of subject matter jurisdiction (such as barring a case at the threshold based on supposed immunity from suit) is a fundamental issue that can be

3

raised at any stage, even for the first time on appeal. If a district court erroneously dismisses a case on immunity grounds (here, §230(c)(1)), a matter akin to 12(b)(1), the appellate court has a duty to review it.

### 2. Errors of Law Are Always Reviewable

If the district court misinterpreted the law (such as by wrongly treating §230(c)(1) as a complete bar to suit rather than an affirmative defense to liability) the appellate court must correct it. Appellate courts review 12(b) dismissals *de novo*, without deference to the district court.

### 3. Due Process & Constitutional Violations Cannot Be Waived

If a dismissal violates due process (such as denying the opportunity to be heard or improperly expanding statutory defenses) appellate courts may review it, even if the plaintiff failed to object properly in the district court. Here, however, Fyk certainly did object but was ignored. A void judgment, issued in clear violation of constitutional protections, may be challenged at any time.

### 4. Structural or Plain Errors Are Not Subject to Waiver

Some errors are so fundamental they cannot be waived, such as a court failing to apply the correct legal standard (*e.g.*, Judge White's misclassification of §230(c)(1) as absolute immunity from suit rather than an affirmative defense to liability) or engaging in judicial overreach by treating Facebook as if it had

automatic, sovereign-like immunity. The plain error doctrine allows appellate courts to correct mistakes that undermine judicial fairness, integrity, or public reputation.

**B.** ***Facebook's Motion to Dismiss and Judge White's Dismissal Order Wrongly Treat Section 230(c)(1) as a Standalone Super-Immunity Unrelated to Rule 12(b)***

Section III.A of Facebook's November 1, 2018, Motion to Dismiss [D.E. 20], spanning pages 4-8 of that brief (ahead of whatever 12(b)(6) failure to state a claim arguments Facebook made), contended as follows:

> CDA Section 230(c)(1) immunity, 'like other forms of immunity, is generally accorded effect at the first logical point in the litigation process,' because 'immunity is an ***immunity from suit*** rather than a mere defense to liability.' *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (*quoting Brown v. Gilmore, 278 F.3d 362, 366* n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original); accord *Levitt v. Yelp! Inc.* ("Levitt I"), 2011 WL 5079526, at *8–9 (N.D. Cal. Oct. 26, 2011).

[D.E. 20] at 4 (emphasis added by Facebook).

Judge White's June 18, 2019, Dismissal Order [D.E. 38] stated as follows:

> Facebook moves to dismiss on two bases. First, that the claims are barred by Section 230(c)(1) of the Communications Decency Act ('CDA') which immunizes internet platforms like Facebook for claims relating to moderation of third-party content on the platform such as 'reviewing, editing, and deciding whether to publish or to withdraw publication of third-party content.' *Barnes v. Yahoo!*, 570 F.3d 1096, 1102 (9th Cir. 2009). Second, Facebook contends that Plaintiff fails to state a cause of action for each of his individual claims.

[D.E. 38] at 1-2. Judge White's dismissal order continued by stating (in an essential cut-and-paste of Facebook's briefing), that *Nemet* and *Levitt* stand for the proposition that §230(c)(1) is an automatic immunity from suit. *See id.* at 3.

Nowhere did Facebook or Judge White frame the supposed §230(c)(1) super-immunity as sounding in 12(b)(1) or 12(b)(2) or 12(b)(6). And at no time did Judge White convert Facebook's supposed 12(b) motion into a Rule 56 motion.

If §230(c)(1) were the absolute immunity from suit that Facebook and Judge White claim (rather than the limited affirmative defense to liability that it is), then §230(c)(2) would be rendered meaningless, mere surplusage (as Fyk has argued since Day 1). Congress could not have intended such a result, as it contradicts fundamental canons of statutory construction and violates due process rights.

But §230(c)(2) is not merely surplusage; Facebook and Judge White's procedural threshold error in treating §230(c)(1) as immunity from suit has deprived Fyk of due process from the outset. Even the very cases they cite (*Nemet* and *Levitt*) affirm that §230(c)(1) is an affirmative defense to liability, not immunity from suit.

The following cases properly interpret §230(c)(1) for what it is – an affirmative defense requiring a merits-based factual analysis, discovery, and potential reconsideration at summary judgment, not the sovereign-like immunity Facebook and Judge White assert. Tragically, every court subsequently handling Fyk's case has blindly followed Judge White's misapplication of §230(c)(1), without

6

meaningful independent analysis. This Court has never addressed this reversible threshold error, and it must do so before Fyk is forced to seek relief from SCOTUS once again – an unnecessary burden if this Court simply applies the law correctly.

C. **Courts Across The Nation (Including In California) Are Uniform In Recognizing Section 230(c)(1) For What It Is – It Is An Affirmative Defense To Liability, Not A "Sovereign" Immunity To Suit**

1. **Energy Automation Systems, Inc. v. Xcentric Ventures, LLC (In-Depth Analysis Cited by the N.D. Cal. Court in *Levitt*)**

The [CDA] statutory language does not speak in terms of immunity and does not deprive courts from exercising personal jurisdiction, but rather *provides a defense to liability* for any cause of action-such as a claim for defamation-that would treat an 'interactive computer service' as a publisher or speaker of information.

Courts have treated this statutory language as granting internet service providers and websites immunity from liability in defamation suits-provided that the service provider or website in question did not participate in the creation of the defamatory statements-*but have not treated the statute as granting immunity from suit. See, e.g., Universal Communications Systems, Inc. v. Lycos, Inc.,* 478 F .3d 413, 418-419 (1st Cir.2007) (holding that the CDA provided complete immunity to liability to cover any claim that would treat the defendant as a publisher); *Zeran v. American Online, Inc.,* 129 F.3d 327, 330-31 (4th Cir.1997) (holding that '§ 230 forbids the imposition of publisher liability on a service provider for the exercise of its editorial and self-regulatory functions'); compare *Anthony v. Yahoo Inc.,* 421 F.Supp.2d 1257, 1262-63 (N.D.Cal.2006) ('No case of which this court is aware has immunized a defendant from allegations that *it* created content.'); *Blumenthal v. Drudge,* 992 F.Supp. 44, 50 (D.D.C.1998) ('Section 230 does not preclude joint liability for the joint development of content.'). Indeed, because the statute itself does not use the term 'immunity' nor contain any provision regarding the exercise of personal jurisdiction, it could not withstand a construction that would bar the federal courts from exercising personal jurisdiction.

7

The distinction between statutory immunity from liability and immunity from suit-that is, immunity from being hailed into federal court at all-is an important one. As the Supreme Court has noted, '[i]t is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.,* the courts' statutory or constitutional power to adjudicate the case.' *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 88 (1998). Although Steel Company dealt with the distinction between subject matter jurisdiction and ultimate liability, the Court's statement applies equally well to the question of personal jurisdiction. Not all defenses to liability (in fact, very few) implicate the court's power to exercise its jurisdiction over a particular entity or individual. Courts are charged with determining questions of jurisdiction before addressing the merits of the case. *See Northwestern Nat'l Casualty Co. v. Global Moving & Storage Inc.,* 533 F.2d 320, 323 (6th Cir.1976) (holding that the district court was in error when it addressed the merits of the case 'before it determined that it had the requisite personal jurisdiction'). For this reason it is important that the court not confuse questions of jurisdiction with questions of liability on the merits.

In the Eleventh Amendment immunity setting, the courts have recognized states' 'immunity from suit' and determined questions of immunity apart from the merits of the underlying case. *See Nelson v. La Crosse County Dist. Atty. (State of Wisconsin),* 301 F .3d 820, 826 (7th Cir.2002) ('At the very core of sovereign immunity is the inherent right of the sovereign to be immune from private suit.'); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98 (1984) (stating that the 'greater significance [of the Eleventh Amendment] lies in its affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III'); *Ku v. State of Tennessee,* 322 F.3d 431, 432 (6th Cir.2003) (noting that 'the Supreme Court is moving in the direction of concluding that, in cases where the district court otherwise has original jurisdiction over the matter, the Eleventh Amendment Immunity defense should be treated in the same way courts have traditionally treated personal jurisdiction rather than as a matter of subject matter jurisdiction'). Additionally, in accordance with specific statutory language in The Foreign Sovereign Immunities Act ('FSIA'), the federal courts have recognized an 'immunity from suit' that is intertwined with questions of both personal and subject

matter jurisdiction. *See Maritime International Nominees Establishment v. The Republic of Guinea,* 693 F.2d 1094, 1099-1100 (C.A.D.C.1982).

However, other forms of immunity, such as federal sovereign immunity, have been treated as defenses to liability, and not as a mechanism for defeating a court's jurisdiction. *See Houston Community Hosp. v. Blue Cross and Blue Shield of Texas, Inc.,* 481 F.3d 265, 280 (5th Cir.2007) (agreeing that '[f]ederal sovereign immunity is an immunity from damages only'); *We, Inc. v. City of Philadelphia,* 174 F.3d 322, 326 (holding that 'the *Noerr-Pennington* doctrine does not against liability'). *To summarize, in the absence of direct statutory or Constitutional authority, courts have not permitted defendants to 'immunize' themselves from being hailed into federal court on the basis of traditional defenses to liability, even where those defenses are labeled 'immunities.'*

*Although courts speak in terms of 'immunity' with regard to the protections afforded by the CDA, this does not mean that the CDA has created an 'immunity from suit' or otherwise implicated this court's personal jurisdiction. Rather, the CDA has created a broad defense to liability. Whether or not that defense applies in any particular case is a question that goes to the merits of that case, and not to the question of jurisdiction. See We, Inc.,* 174 F.3d at 329 ('[W]e have been unable to find any case holding that the burden of litigation on a private defendant justifies an immunity from suit as well as a defense to liability.')

The importance of this distinction is well-illustrated by the facts at hand. The plaintiff has alleged, in the Amended Complaint and elsewhere, that the defendants created and *developed the alleged defamatory content at issue* and, therefore, that the protections afforded by the CDA do not apply in this case. The defendants have contradicted the plaintiff's allegations in a declaration and in several affidavits provided by employees of defendant Xcentric. Whether or not the defendants did, in fact, participate in the creation of the alleged content is inextricably tied to the merits of the plaintiff's defamation claim, if not each of its claims, and *requires a factual determination that is not appropriately made at this early stage of the litigation. Ruling on that issue requires inquiry into a factual record that will not*

*exist until the parties have been afforded ample time to complete discovery.*

Generally, when a court faces questions going to the merits of a case in a Rule 12(b)(2) motion, that motion may be converted to a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim. *See* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1351 (when a defendant raises arguments going to the sufficiency of the claim in a 12(b)(2) motion 'the district court may adjudicate the motion and ignore the way it is captioned'); *Larson v. The Port of New York Authority,* 17 F.R.D. 298, 300 (S.D.N.Y.1955) (holding that, '[n]otwithstanding that [the] movant predicates its motion upon F.R.Civ.P. 12(b)(1) and (2), the motion is deemed one to dismiss for failure to state a claim upon which relief can be granted and will be disposed of accordingly').

In the present case, the defendants' arguments on the merits rely on affidavits and other documents; the defendants do not argue that the Amended Complaint is deficient on its face. Federal Rule of Civil Procedure 12(b) states that, where matters outside the pleadings have been submitted for the court's consideration of a motion to dismiss, the court 'shall' treat the motion as a motion for summary judgment and shall give the parties a 'reasonable opportunity to present all material made pertinent to such a motion by Rule 56.' Fed.R.Civ.P. 12(b). Therefore, in order for the court to consider the defendants' arguments on the merits, the defendants' motion must be analyzed as a Motion for Summary Judgment.

Under Federal Rule of Civil Procedure 56(f), where a party cannot 'present by affidavit facts essential to justify the party's opposition, the court may ... order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.' Additionally, the Sixth Circuit has held that, '[b]efore ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case.' *Plott v. General Motors Corp.,* 71 F.3d 1190, 1195 (6th Cir.1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986) (stressing the importance of allowing ample time for discovery); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (same)).

The plaintiff did not move to lift the stay on discovery pursuant to Rule

56(f), but rather to obtain discovery on arguments the defendants have asserted to defeat jurisdiction. *However, the court has found that the defendants' arguments-concerning 'immunity' under the CDA-go to the merits of the plaintiffs' claims, and not to jurisdiction.* Because the plaintiff's motion to lift stay was predicated on the need to rebut the plaintiff's immunity arguments, the court will grant the plaintiff's motion on the basis of Rule 56(f) and in accordance with the Sixth Circuit's stricture that 'a district judge must afford the parties adequate time for discovery' before ruling on a summary judgment motion. *Plott,* 71 F.3d at 1195.

*Energy Automation Systems, Inc. v. Xcentric Ventures, LLC*, No. 3:06-1079, 2007 WL 1557202, *12-15 (M.D. Tenn. May 25, 2007) (emphasis added) (internal footnotes omitted).

### 2. *Levitt v. Yelp! Inc.* **(Misconstrued by Facebook and Judge White During Dismissal – Reversible Error, Never Addressed By This Court)**

Accordingly to Yelp, it is 'squarely immune' under the Communications Decency Act ('CDA'), 47 U.S.C. § 230(c), from claims arising from such activity. Mot. at 15. Although, as explained more fully below, Section 230(c) precludes certain aspects of Plaintiffs' unfair and unlawful practices claims, *it does not provide Yelp blanket 'immunity' from suit or in any way limit this court's jurisdiction over Plaintiffs' claims. See Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1100 (9th Cir. 2009) ('*[I]t appears clear that neither this subsection nor any other declares a general immunity from liability from third-party content ... 'Subsection (c)(1) does not mention 'immunity' or any synonym.'*) (quoting *Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist, Inc.,* 519 F.3d 666, 669 (7th Cir. 2008)); *Energy Automation Sys., Inc. v. Xcentric Ventures LLC,* No. 3:06-1079, 2007 WL 1557202, at (M.D. Tenn. May 25, 2007) ('Although courts speak in terms of 'immunity' *... this does not mean that the CDA has created an 'immunity from suit' ... Whether or not that defense applies in any particular case is a question that goes to the merits of that case,* and not to the question of jurisdiction.'). Section 230(c) prohibits causes of action in which a plaintiff seeks (1) to treat that entity as the publisher

11

of independently posted content, 47 U.S.C. § 230(c)(1); *see, e.g.,*
*Barnes*, 570 F.3d at 1103 or (2) to challenge the good faith blocking or
removal of certain categories of objectionable content, 47 U.S.C. §
230(c)(2); *see, e.g., e360insight, LLC v. Comcast Corp.*, 546 F. Supp.
2d 605 (N.D. Ill. 2008). *Yelp provides no authority for the broader*
*proposition that Section 230(c) affects this court's subject matter*
*jurisdiction.*

*Levitt v. Yelp! Inc.*, No. C 10-1321MHP, 2011 WL 131532320, *6 (N.D. Cal. Mar.

22, 2011) (emphasis added).

### 3.   *Barnes v. Yahoo!, Inc.* **(Misconstrued by Facebook and Judge White During Dismissal – Reversible Error, Never Addressed By This Court)**

Section 230(c) has two parts. Yahoo relies exclusively on the first part,
which bars courts from treating certain internet service providers as
publishers or speakers. ***Looking at the text, it appears clear that***
***neither this subsection nor any other declares a general immunity***
***from liability deriving from third-party content, as Yahoo argues it***
***does.*** 'Subsection (c)(1) does not mention 'immunity' or any synonym.'
*Chi. Lawyers' Comm. for Civil Rights Under Law, Inc. v. Craigslist,*
*Inc.,* 519 F.3d 666, 669 (7th Cir.2008). Our recent *en banc* decision in
*Fair Housing Council of San Fernando Valley v. Roommates.Com,*
*LLC,* rested not on broad statements of immunity but rather on a careful
exegesis of the statutory language. 521 F.3d 1157, 1171 (9th Cir.2008)
(en banc) (noting that to ***'provid[e] immunity every time a website uses***
***data initially obtained from third parties would eviscerate [the***
***statute]'***).

Following this approach, one notices that subsection (c)(1), which after
all is captioned 'Treatment of publisher or speaker,' precludes liability
only by means of a definition. 'No provider or user of an interactive
computer service,' it says, '*shall be treated* as the publisher or speaker
of any information provided by another information content provider.'
§ 230(c)(1) (emphasis added). Subsection 230(e)(3) makes explicit the
relevance of this definition, for it cautions that '[n]o cause of action
may be brought and no liability may be imposed under any State or
local law that is inconsistent with this section.' Bringing these two

12

subsections together, it appears that subsection (c)(1) only protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a **publisher or speaker** (3) of information provided by another information content provider.

*Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100-1101 (9th Cir. 2009) (bold emphasis added) (other emphasis in original) (internal footnotes omitted).

### 4. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.* **(Misconstrued by Facebook and Judge White During Dismissal – Reversible Error, Never Addressed By This Court)**

In addressing the *Energy Automation* decision (above), the *Nemet* court held, in pertinent part, as follows:

The court implicitly acknowledged that a court *could* properly address [the 230(c)(1) immunity)] issue on a 12(b)(6) motion, and that it was precluded from doing so in that case 1) because it was before the Court on a 12(b)(2) motion; and 2) it could not convert the pleading into a 12(b)(6) motion because of the inclusion of additional extrinsic evidence by the parties.

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 564 F. Supp. 2d 544, 551 (E.D. Va. 2008) (emphasis in original). Had Judge White attempted to *sua sponte* convert Facebook's Motion to Dismiss into something other than what it was (which he did not), he could not have done so because of the presence of extrinsic evidence.

## III. Conclusion

Courts from across the nation (including California courts, and including the decisions Facebook and Judge White so heavily relied on in dismissing Fyk's case

at the threshold and tainting the case across the next six-plus years … if the foundation is flawed, that which rests on top is worthless) concur that §230(c)(1) is an affirmative defense to *liability* that goes to the merits; *i.e.*, is anything but an automatic, blanket immunity to *suit* at the threshold. This is probably why neither Facebook nor Judge White framed the §230(c)(1) dismissal "analysis" within a dismissal framework (not 12(b)(1), not 12(b)(2), not 12(b)(6), nothing) … they framed it as some mythical standalone "sovereign-like" immunity because there simply is no procedural basis for §230(c)(1) dismissal. The §230(c)(1) affirmative defense must proceed exactly the way the courts above say it must proceed – allow discovery and revisit same at the summary stage, just as any merit-based dispute (subject to potential affirmative defense) proceeds in the real world, not the due-process-less Twilight Zone Fyk has been stuck in for going on seven years.

Judge White could have arguably converted Facebook's standalone §230(c)(1) super-immunity argument into a Rule 56 motion and attempted to summarily adjudicate on the face of the Verified Complaint, but Judge White did not. And, as *Nemet* recognizes (in citation to *Energy Automation*), Judge White could not have done that anyway because competing evidence was present.

Fyk's Complaint was / is a Verified Complaint. A verified complaint is different from a standard complaint because it is sworn under oath, making the allegations factually verified rather than merely alleged; *i.e.*, Fyk presented his

14

averments as evidence, not allegation. This has significant procedural implications: (a) Courts must treat the verified allegations as evidence at the motion-to-dismiss stage; (b) Under Rule 12(b)(6), courts must assume the truth of factual allegations (evidence, actually) and draw all inferences in the plaintiff's favor; (c) If a factual dispute exists, the court cannot dismiss the case under Rule 12(b)(6) and must allow discovery or convert the motion to summary judgment under Rule 56. And as to evidence at play at the dismissal stage in 2018/2019, it was not just Fyk's Verified Complaint. Facebook's Motion to Dismiss introduced its own make-believe version of facts / evidence, and Fyk's Reply attached exhibits (evidence) in an effort to dispel the lies that Facebook had introduced in its Motion to Dismiss (lies that Judge White embraced wholeheartedly).

Judge White entirely ignored the fact that §230(c)(1) is a liability affirmative defense (not a blanket immunity from suit) and ignored all the above procedural safeguards, improperly dismissing Fyk's case at the pleading stage despite the existence of factual / evidentiary disputes (*e.g.,* whether Facebook was acting as a neutral platform or engaged in content development) and despite the requirement that verified allegations must be treated as evidence at the dismissal stage.

This Court's mandate must be recalled amidst the threshold procedural blunders that forever tainted this case and stripped Fyk of due process at every turn, and this case must be remanded to the District Court to proceed with discovery.

## **CERTIFICATE OF COMPLIANCE**

Undersigned counsel certifies that this brief complies with Ninth Circuit rules concerning petitions for rehearing (as a motion to recall mandate is treated similarly) because the type-volume limitation does not exceed 15 pages. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Times New Roman 14-point font.

Dated: March 3, 2025.

Respectfully Submitted,

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**
*pro hac vice* admitted
Greyber Law, PLLC
9170 Glades Rd., #161
Boca Raton, FL 33434
jgreyber@greyberlaw.com
(561) 702-7673 (o); (833) 809-0137 (f)

**Constance J. Yu, Esq.**
SBN: 182704
Putterman | Yu | Wang, LLP
345 California St., Ste 1160
San Francisco, CA 94104-2626
cyu@plylaw.com
(415) 839-8779 (o); (415) 737-1363 (f)
*Attorneys for Plaintiff-Appellant, Fyk*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2025, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM / ECF system. Participants in the case who are registered CM / ECF users will be served by the appellate CM / ECF system.

/s/ Jeffrey L. Greyber
**Jeffrey L. Greyber, Esq.**